**Francis ELLISON, Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Appellee.**

**No. 90–1122.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1990.

Decided Dec. 26, 1990.

Robert A. Crowe, St. Louis, Mo., for appellant.

Henry J. Fredericks, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, MAGILL and BEAM, Circuit Judges.

MAGILL, Circuit Judge.

Francis Ellison appeals from the district court's order affirming the decision of the Secretary of Health and Human Services to deny Ellison's application for disability benefits under 42 U.S.C. §§ 416(l), 423 (1988), and supplemental security income benefits under 42 U.S.C. § 1381 (1988). On appeal, Ellison argues that the district court erred because the Secretary's decision was not supported by substantial evidence. We reverse and remand for further proceedings.

I.

Ellison filed an application for social security benefits on February 1, 1988. He alleged disability as of July 24, 1982, due to a bad back, poor vision, and shortness of breath. After Ellison's application was denied initially and on reconsideration, he requested and was granted a hearing before an Administrative Law Judge (ALJ).

The hearing was held on August 17, 1988. Ellison testified that he was fifty-six years old, had a fourth grade education, had worked from 1962 to 1982 as a forklift operator and driver, but in 1982 had been laid off and had not worked since. He testified that his physical disabilities prevented him from walking more than one block, from standing or sitting more than thirty minutes, and from lifting more than ten pounds. He also testified that his back pain had persisted for more than eight months, and that his emphysema had persisted for more than a year. He further testified that he had never been hospitalized for the back pain or for the emphy-

sema, and that he was taking medication for the emphysema. Ellison admitted that he helped his daughter cook, pick up around the house, and carry groceries, and that he sometimes mowed the lawn, although he had to stop and rest occasionally. The ALJ then heard the testimony of a vocational expert (VE), who testified as to the nature of Ellison's skills and the number of jobs in the local economy that a person with Ellison's characteristics could perform.

On August 31, 1988, the ALJ issued his findings. He found, among other things, that the medical evidence established that Ellison had mild osteoarthritis of the cervical and lumbar spine, moderately severe chronic obstructive pulmonary disease (emphysema) that was significantly helped with medication, and hyperopia, but that Ellison did not have an impairment that automatically compelled a conclusion of disability (Finding 3); that Ellison's allegations of pain and inability to sit for long periods were not supported by medical evidence, his daily activities, his treatment history, or his appearance and testimony at the hearings, and thus were not credible (Finding 4); that Ellison was unable to perform either of his past jobs (Finding 5); that Ellison's residual functional capacity for sedentary work was reduced by the need to work in clean, temperate air (Finding 6); that Ellison was of advanced age (Finding 7); that Ellison's educational level was marginal (Finding 8); and that Ellison had manual work skills that, considering his residual functional capacity, could be applied to meet the requirements of other semi-skilled machine operating work (Finding 9). Based on these findings, the ALJ concluded that Ellison was not under a disability and thus was not entitled to benefits.

The Appeals Council denied Ellison's request to review, and Ellison appealed to the federal district court pursuant to 42 U.S.C. § 405(g) (1988). The case was referred to a United States Magistrate Judge, who found in his September 22, 1989, Review and Recommendation that substantial evidence supported the ALJ's decision and recommended that the decision be affirmed in all respects. Ellison objected on the grounds that the Magistrate Judge failed to apply the Social Security Medical Vocational Guidelines properly and that the ALJ's decision was not supported by substantial evidence. The district court, on November 6, 1989, adopted the Magistrate Judge's Review and Recommendation and granted the Secretary's motion for summary judgment. Ellison now appeals this order.

## II.

### A. Standard of Review

A reviewing court may not reverse a denial of disability benefits if the denial is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (1988). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *accord Hammonds v. Bowen*, 870 F.2d 446, 448 (8th Cir.1989). A reviewing court thus must examine all of the evidence, including evidence that detracts from the ALJ's conclusion, but may not substitute its judgment for that of the ALJ. *See Hammonds*, 870 F.2d at 448.

### B. Legal Framework

To qualify for disability benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; ...." 42 U.S.C. § 423(d)(1) (1988). The Secretary has established by regulation a "five-step sequential evaluation" for determining whether an individual is disabled.[1] *See*

---

1. The first step involves determining whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b) (1988). If the claimant is engaged in such activity, benefits are denied. If not, the next step involves determining whether the claimant has

*Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1986). Only the fifth step, the determination of whether there are other jobs in the national economy that a claimant can perform, in light of the claimant's residual functional capacity, age, education, and work experience, is relevant to this appeal. As we summarized the fifth step in *Parsons v. Heckler*, 739 F.2d 1334 (8th Cir.1984):

> Once the claimant has established an inability to return to his past relevant work, the burden of going forward with evidence shifts to the Secretary to show other jobs in the economy that the claimant is capable of performing. Where an exertional [physical] impairment is demonstrated, the Secretary may fulfill this burden by reference to the medical-vocational guidelines contained in the Secretary's regulations.... The Secretary may not rely on these guidelines if the record indicates that the claimant suffers from a nonexertional impairment.... In such cases, and in cases of exertional impairment which do not fit within the guidelines, the Secretary must use vocational expert testimony or other similar evidence to meet [the] burden of showing there are jobs in the national economy which the claimant is capable of performing.

*Id.* at 1339 (citations omitted).

## C. Discussion

Ellison contends that the district court erred in affirming the ALJ's decision that Ellison was not disabled, and thus not eligible for social security benefits. Ellison specifically claims that the ALJ improperly used the VE's testimony to rebut the conclusion of disability the guidelines mandated; that the ALJ's finding that Ellison had manual work skills that could be applied to meet the requirements of other semi-skilled machine operating work was not supported by substantial evidence; and that the Secretary failed to satisfy his burden of proof that other jobs exist in the economy that Ellison can perform.

■ Ellison's claim that the ALJ improperly used the VE's testimony to rebut the conclusion mandated by the guidelines assumes that the guidelines apply.[2] In this

---

a medically severe impairment or combination of impairments. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, benefits are denied. If such an impairment exists, the third step involves determining whether the impairment matches up with one of a number of listed impairments that are conclusively presumed to be disabling. *Id.* §§ 404.1520(d), 416.-920(d); 20 C.F.R. pt. 404, subpt. P, App. 1 (1988). If the impairment is not conclusively disabling, the fourth step involves determining whether the impairment prevents the claimant from returning to work previously performed. If the previously-performed work can be returned to, benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1988). Finally, if the claimant cannot return to this work, the fifth step involves determining whether the claimant is able to perform other work in the national economy. This determination must be made in light of the claimant's age, education, and work experience. Only if the claimant is not able to perform any other work are benefits awarded. *Id.* §§ 404.1520(f), 416.920(f). *See Bowen v. Yuckert*, 482 U.S. 137, 140–41, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1986).

**2.** The guidelines are codified at 20 C.F.R. pt. 404, subpt. P, App. 2 (1988). The Secretary promulgated the guidelines and their related regulations in 1978. Before this time, the Secretary had used vocational experts in the fifth step of the disability determination to testify as to whether, based on the claimant's background, suitable jobs existed in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The vocational experts were often criticized for their inconsistent treatment of similar claimants. *Id.* The Secretary promulgated the guidelines to "improve both the uniformity and efficiency of this [fifth-step] determination." *Id.* (footnote omitted). In *Campbell*, Justice Powell described the guidelines and their operation:

> They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Id.* at 461–62, 103 S.Ct. at 1954–55 (footnotes omitted). Thus, when a claimant's background factors correspond with those in a particular guideline, the testimony of a vocational expert about the number of jobs a claimant is capable of performing is not needed. *See id.* at 461, 103 S.Ct. at 1954.

case, however, they do not. The ALJ found that Ellison's residual functional capacity for sedentary work was reduced by the need to work in clean, temperate air (Finding 6). This finding, which Ellison does not challenge, establishes that Ellison cannot perform the full range of sedentary jobs. The guidelines do not apply to a claimant whose residual functional capacity is reduced in this fashion, unless the reduction is insignificant. Soc.Sec.Rul. 83–12. Ellison's reduction is significant because, according to the VE, only half of the jobs available to Ellison featured the sort of environmental conditions he required. *See id.* (reduction insignificant where a very few jobs are eliminated). Therefore, the guidelines cannot "direct a conclusion of disabled or not disabled" for Ellison, *see* C.F.R. pt. 404, subpt. P, App. 2 § 200.00(a) (1988), and his first claim fails.

Ellison also claims that the ALJ's finding that Ellison could perform other work in the national economy because of his transferable skills (Finding 9) was not supported by substantial evidence. The transferability of Ellison's skills is important because although the guidelines do not control in this case, they provide a framework for the disability determination. "In any instance where a rule does not apply, full consideration must be given to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the guidelines." 20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(a) (1988); *see* Soc.Sec.Rul. 83–12. Therefore, the conclusion the guidelines suggest based on Ellison's background factors and residual functional capacity is important. In this case, that conclusion differs depending on whether Ellison's skills are transferable or nontransferable.

The guideline most nearly applicable to Ellison's case is Table 1, because it applies to people whose residual functional capacity is limited to sedentary work. Table 1's first category is "Age." The ALJ's Finding 7 states that Ellison's age is "advanced." Table 1's second category is "Education." The ALJ's Finding 8 states that Ellison's education is "marginal." Table 1's third category is "Previous Work Expe-

rience." The ALJ's Finding 9 states that Ellison is semi-skilled with transferable skills. Table 1's final category is "Decision." For a claimant with these background factors, Table 1 mandates a conclusion of "Not Disabled" under 20 C.F.R. pt. 404, subpt. P, App. 2 § 201.03 (1988). If the same background factors are applied with the exception that Ellison's skills are classified as nontransferable, Table 1 mandates a finding of "Disabled" under 20 C.F.R. pt. 404, subpt. P, App. 2 § 201.02 (1988). The regulations make it clear that a person of advanced age, limited to sedentary work, and with no transferable skills, is usually considered disabled. *See* 20 C.F.R. pt. 404, subpt. P, App. 2 § 201.00(c), (d) (1988). Therefore, to the extent that the ALJ relied on Finding 9 to determine that Ellison was not disabled, if that finding is not supported by substantial evidence, the disability determination must be reversed.

■ Ellison contends that the VE's only testimony concerning the transferability of his skills is the VE's response to the ALJ's request to classify Ellison's past work with regard to skill and exertional levels: "Both of his jobs are classified as *semi-skilled without transferable skills.*" Admin. Tr. at 40 (emphasis added). In his decision, the ALJ reported only that the VE testified that Ellison's past work was semi-skilled. Admin. Tr. at 12. 20 C.F.R. § 404.1566(e) (1988) expressly authorizes the Secretary to use a vocational expert to determine whether a claimant's skills are transferable. The Secretary concedes that the VE testified that Ellison's skills were not transferable, but argues that the VE also testified that Ellison could perform other industrial truck operating jobs, that this means that Ellison's skills were transferable, and therefore that substantial evidence supports the ALJ's finding.

This "other jobs" testimony was in response to the ALJ's first hypothetical, in which he described Ellison's background factors, assumed that Ellison's allegations as to physical impairments, pain, and limitations were true, and asked the VE whether Ellison could return to his past jobs and

whether there were any other jobs in the national economy Ellison could perform. The VE's testimony in response to the second question does not constitute substantial evidence that Ellison's skills were transferable, because the VE was addressing whether jobs existed that Ellison could perform, not whether Ellison's skills were transferable. Although this may be some evidence of the transferability of Ellison's skills, it is not substantial evidence. Rather, we believe substantial evidence, in the form of the VE's direct testimony, supports the finding that Ellison's skills are not transferable.

■ Ellison also argues that the Secretary failed to satisfy his burden of proof that other jobs existed in the economy that Ellison could perform. To satisfy that burden, the ALJ relied on the VE, and therefore the VE's testimony is critical. In cases where the claimant cannot perform the full range of sedentary work, the vocational expert is responsible for

> assess[ing] the effect of any limitation on the range of work at issue ...; advis[ing] whether the impaired person's [residual functional capacity] permits him or her to perform substantial numbers of occupations within the range of work at issue; identify[ing] jobs which are within the [residual functional capacity], if they exist; and provid[ing] a statement of the incidence of such jobs in the region in which the person lives.

Soc.Sec.Rul. 83–12. The VE in this case attempted to fulfill these responsibilities in his responses to the ALJ's hypotheticals. The first hypothetical, as noted previously, described Ellison's background factors and assumed that his allegations as to physical impairments, pain, and limitations were true. The ALJ first asked the VE whether Ellison could return to any of his past jobs. The VE answered no, due to Ellison's testimony about his ability to lift or carry objects. The ALJ then asked the VE whether there were any jobs in the national economy that Ellison could perform. The VE answered that there were other industrial truck driver jobs that did not involve lifting. Because the VE did not specify what

those jobs were or how numerous they were, the ALJ cannot rely on this testimony to establish that there are jobs in the local economy that Ellison is capable of performing.

In his second hypothetical, the ALJ asked the VE to consider the same background factors, and assume that the ALJ found that the medical evidence indicated that Ellison had a degenerative back problem with a range of motion within normal limits, emphysema, and 20/50 visual acuity; that Ellison's alleged pain was at most mild to moderate; that Ellison could perform work of a sedentary, light, or medium exertional level; and that Ellison's emphysema would restrict him to a workstation with clean air and without extreme temperature change. The ALJ asked the VE whether, based on these facts, Ellison could return to his past job. The VE answered that Ellison could return to his first forklift driving job in a non-polluted atmosphere and that the exertional requirement would be light. The ALJ then asked the VE if Ellison could return to his other forklift job, to which the VE responded no because of its polluted air and widely-varying temperatures. The ALJ next asked the VE whether Ellison could perform any other jobs. The VE answered that other industrial truck operating jobs, such as conveyor or straddle truck operator, would be appropriate, as would janitorial jobs of a medium exertional nature. The VE further testified that locally there were 30,000 of these jobs featuring the type of environment Ellison required.

The problem with the ALJ's conclusion that, based on the VE's testimony, there were other jobs Ellison could perform is that the conclusion is based on the assumption that Ellison could do sedentary, light, or medium work, but the ALJ specifically found that Ellison could only do limited sedentary work. None of the jobs the VE suggested falls into the sedentary category. According to the *Dictionary of Occupational Titles* of which the Secretary takes administrative notice, *see* 20 C.F.R. § 404–1566(d)(1) (1988), as supplemented by *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles*, straddle truck operator is classi-

fied as light work, conveyor operator is classified as heavy work, and janitor is classified as medium work. Thus, the VE did not identify any jobs in the local economy that Ellison was physically able to perform.

We have previously found that an ALJ's misapplication of a vocational expert's testimony warranted reversal of a disability determination. In *Penn v. Sullivan*, 896 F.2d 313 (8th Cir.1990), we stated that an ALJ's reliance on a vocational expert's testimony to determine that no disability existed was improper where the ALJ ignored a critical assumption underlying the expert's testimony. *Id.* at 317. The same thing has occurred in this case. Here, the ALJ relied on the VE's testimony in response to a hypothetical using exertional levels not applicable to Ellison. This is clear from the ALJ's summary of the second hypothetical, where he mentions everything except the proposed exertional levels. Admin. Tr. at 13. As in *Penn*, the ALJ's selective reliance on the VE's testimony was improper.

Because there is no evidence of what jobs Ellison can perform given his restricted physical capacity, and because substantial evidence shows that Ellison's skills were nontransferable, the ALJ's determination that Ellison was not disabled is reversed.

### III.

For the foregoing reasons, we direct that this case be remanded to the district court with instructions that it be returned to the Secretary for a disability determination using the guidelines as a framework. The Secretary must satisfy the burden of producing evidence that there are other jobs in the local economy that Ellison can perform, given his residual functional capacity and the nontransferability of his skills. If Ellison is found to be disabled, the Secretary should determine the onset date of the disability and award benefits accordingly.