Charles **ELAM**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration**

No. 1:04–CV–311.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 9, 2005.

Plaintiff pro se (Charles Elam), for Plaintiff.

Ruben Montemayor, for Defendant.

## MEMORANDUM ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

COBB, District Judge.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The magistrate judge has submitted a Report and Recommendation of United States Magistrate Judge. The magistrate judge recommends that the decision of the Commissioner be affirmed and the case dismissed.

The court has received and considered the Report and Recommendation of United States Magistrate Judge, along with the record, pleadings, and all available evidence. Plaintiff filed objections to the magistrate judge's Report and Recommendation.

The court has conducted a *de novo* review of the objections in relation to the pleadings and the applicable law. *See* FED. R. CIV. P. 72(b). After careful consideration, the court concludes the objections are without merit.

## ORDER

Accordingly, plaintiff's objections are **OVERRULED**. The findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED**. A final judgment will be entered in this case in accordance with the magistrate judge's recommendation.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1]

### I. NATURE OF THE CASE

■ Plaintiff seeks judicial review of the Commissioner of Social Security Administration's (SSA) decision denying his application for Social Security disability benefits. United States district courts may review such decisions. 42 U.S.C. § 405 (2003). However, Congress limits the scope of judicial review to determinations as to whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). Moreover, if proper principles of law were applied, and the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor*

---

1. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magistrate Judges, and Beaumont General Order 00–02.

*Relations Board,* 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also,* 42 U.S.C. § 405(g).

## II. PROCEEDINGS

Plaintiff applied for Supplemental Security Benefits [2] (SSI) on March 14, 2002 (Tr. 53–57), claiming disability due to "back pain—bulging disc" (Tr. 85). Plaintiff's claim was denied initially (Tr. 23) and upon reconsideration (Tr. 31). Plaintiff then requested a hearing before an administrative law judge (ALJ) (Tr. 34). ALJ Harry L.

Williams convened an evidentiary hearing on November 13, 2003, at which plaintiff appeared represented by attorney Marcia DeLarue, Esq.

■ At the evidentiary hearing ALJ Williams received direct testimony from plaintiff and vocational expert [3] (VE) Kay Gilreath.[4] The remaining evidentiary record consisted of reports from treating sources; [5] reports from consultative examining physicians; [6] and Residual Functional Capacity Assessment completed by a

---

**2.** Supplemental Security Income (SSI) benefits are authorized by Title XVI of the Social Security Act, and are funded by general tax revenues. *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed.2001), *available at* http://www.ssa.gov/OP_Home/handbook. The SSI program is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of *indigence* and *disability.* H.R. REP. No. 92–231, (1972), reprinted in 1972 U.S.C.C.A.N. 4989, 5132–5133. See also 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C) (1992 & Supp. 2002).

**3.** Vocational Experts are utilized by the ALJ to determine complex issues, such as whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 416.966(e) (2004). The VE's testimony must: (1) assess the effect of any limitation on the range of work at issue; (2) advise whether the impaired person's residual functional capacity permits him or her to perform substantial numbers of occupations within the range of work at issue; and, (3) identify jobs if they exist and provide a statement of the incidence of such jobs in the region in which the person lives. *See Ellison v. Sullivan,* 921 F.2d 816, 821 (8th Cir.1990).

**4.** Kay Gilreath has worked as Vocational Rehabilitation Counselor and Consultant for Alfred and Vasquez Associates in Houston, Texas, since 1994. Tr. 39.

**5.** Records from (1) Gulf Coast Health Center, Inc., in Newton, Texas, document the period from June through August, 2001, and March

through November, 2003. Treatment notes indicate routine monitoring of blood pressure and requests for medication to treat hypertension. Tr. 122. A diagnosis (physician's signature illegible) dated November 17, 2003, states that plaintiff was diagnosed with arthritis in his right hand and "recommend[s] no use of r. hand for indefinite time." Tr. 184. This diagnosis apparently is based on plaintiff's subjective complaint of pain in his right hand and the examiner's observation that plaintiff's right hand is "tender." Tr. 185.

Treatment notes from Dr. Michael Fleck of East Texas Chiropractic in Jasper, Texas, indicates treatment of cervical and lumbar pain by manipulation, heat massage, and therapeutic exercise, from February, 2001, through January, 2002. Tr. 133–76. Dr. Fleck frequently noted improvement in plaintiff's condition. See, e.g., Tr. 136, 137, 159, 163. Dr. Fleck's assessment on plaintiff's last visit indicates that his progress has been "favorable." Tr. 134.

Dr. Lynn Pearson, D.O., of Jasper, Texas, saw plaintiff from April, 2001, through September 3, 2002, for treatment of "traumatic synovitis—left knee [and] lumbar strain—traumatic in origin." Tr. 181. On June 20, 2002, Dr. Pearson noted that "X-ray shows good knee joint architecture.... Complete lumbar spine film shows a good lordotic curve. Absence of spondylolisthesis. No lipping or spurring." Tr. 180. Dr. Pearson's last treatment note dated September 3, 2002, indicates that plaintiff was "doing well [with] excellent range of motion.... Discharged from care.... Full duty." Tr. 178.

**6.** In a consultative examination report, requested by Texas Rehabilitation Commission-

medical consultant[7] upon request of Texas Department of Disability Determinations.

## III. THE ADMINISTRATIVE DECISION

ALJ Williams concluded that plaintiff is not disabled. Specifically, he found that plaintiff's combination of impairments— "lumbar spine problems, high blood pressure, knee pain, and shoulder pain" (Tr. 13)—to be severe but insufficiently severe to meet or equal any impairment in the Listing of Impairments (Listings).[8] Although plaintiff complained of pain in his right hand, ALJ Williams declined to find a severe impairment of his right hand, due to evidence that such alleged condition has not existed more than 12 months prior to determination. He further found that plaintiff has residual functional capacity[9] (RFC) to perform work at "less than the full range of light, but more than sedentary work,"[10] with the following limita-

---

er Disability Examiner, Dr. Frankie Siy, M.D., of Port Arthur, Texas, reported that plaintiff walked "with an uncharacteristic limp" and had difficulty with "heel and toe walk [and] knee bend." Dr. Siy opined that "[t]hese are more functional in nature with no observable corresponding pathology." Tr. 128. Regarding plaintiff's spine, Dr. Siy reported no spasm or tenderness and "cervical, thoracic, and lumbosacral spinal range of motion is normal .... No obvious anatomic pathology observed." *Id.* Regarding plaintiff's complaint of shoulder pain, Dr. Siy reported "shoulder muscles are symmetrical [with] no evidence of focal atrohpy (sic)," and normal range of motion with "no sensory or motor deficit." *Id.*

In an orthopedic examination report, dated July 2, 2002, Dr. Osama B. Nahas, M.D., of Nahas Medical Services in Edinburg, Texas, reported that plaintiff has "back tenderness and muscle guarding in the left para-spinal lumbosacral region .... sitting straight-leg-raising is up to 75 [percent].... no evidence of muscle wasting, atrophy, or fasciculation.... walks with a limp to the left side.... [and] no signs of ataxia." Tr. 110. Dr. Nahas also reported that "[l]umbo-sacral spine radiograph shows degenerative changes with narrowing of the disc interspace at the L5–S1 level ... [and] no spondylolisthesis." He assessed plaintiff with "chronic lower back pain." Tr. 112.

**7.** "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a) (2004). A medical consultant must be "a licensed physician (medical or osteopathic), a licensed optometrist, a licensed podiatrist, or a qualified speech-language pathologist.... [and] must meet any appropriate qualifications for his or her specialty as explained in § 404.1513(a)." 20 C.F.R. § 404.1616(b) (2004).

Dr. William M. Runkle, M.D., reviewed plaintiff's medical evidence to complete an assessment of residual functional capacity. Dr. Runkle opined that plaintiff can lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk and sit about 6 hours in an 8–hour workday; and push and/or pull with unlimited ability. Tr. 114. He further opined that plaintiff should only occasionally stoop or crouch but can frequently climb, balance, kneel, and crawl. Tr. 115. Dr. Runkle found no manipulative, visual, communicative, or environmental limitations. Tr. 116–17.

**8.** See Sec. V.C.1., *infra,* for discussion of Listings.

**9.** "Residual functional capacity is defined as 'the most you can still do despite your limitations.'" 20 C.F.R. § 416.945(a)(1) (2004). It has three components: physical abilities, mental abilities, and other impairments. *Id.*

**10.** "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.... [Light work] requires a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b) (2004).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files,

tions: option to sit down every 30 minutes during an 8–hour workday; occasionally climb stairs and ramps, stoop, kneel, and crouch; and never crawl or climb ropes, ladders, or scaffolds. Tr. 18, Finding 6. Based on vocational testimony, he found that plaintiff can perform alternative work available in significant numbers in the national economy. He therefore found that plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." Tr. 18, Finding 12.

### IV. Motion For Summary Judgment

Because plaintiff proceeds *pro se,* the court ordered the Commissioner to file a transcript of administrative proceedings, and requested that the Commissioner accompany the transcript with a motion for summary judgment should the Commissioner advocate affirming the administrative disposition (Dkt. No. 10). The Commissioner filed the administrative transcript on March 28, 2005 (Dkt. No. 16), and a motion for summary judgment with memorandum in support on April 6, 2005. Dkt. No. 23, 24.

The Commissioner argues that plaintiff's medical evidence failed to demonstrate disability because no physician-imposed restrictions are in the record, plaintiff takes only over-the-counter medication, and plaintiff's own statements support the ALJ's RFC determination. The Commissioner also argues that plaintiff's treating physician released him to full work duty. Finally, the Commissioner argues that plaintiff's claim of inability to pay for medical treatment is unsupported by objective evidence. The Commissioner concludes that ALJ Williams's decision is supported by substantial evidence of record.

Plaintiff disagrees, arguing that his pain is disabling. He further argues that his treating physician released him from treatment on his own request because the physician was not treating him successfully. Pl.'s Resp. At p. 1. He also argues that he could not afford medical care. *Id.* at p. 2.

### V. Discussion And Analysis

The Commissioner's motion defends her decision rather than impugning it. The court cannot reasonably expect more. To order the Commissioner to ferret out possible errors and argue them in plaintiff's behalf would, at best, be akin to asking the fox to guard the hen house.

The lay plaintiff, predictably, invites the court to re-weigh the evidence and direct the Commissioner to award benefits. Plaintiff's unfamiliarity with legal terms of art such as "substantial evidence" and lack of expertise in arcane rules governing administrative adjudication of social security applications handicap plaintiff in articulating cognizable grounds for judicial review.

The parties' submissions, while useful in the sense of getting the administrative record before the court and for familiarizing the court with basic contentions, do not focus well on the critical issues that courts can address in limited judicial review under Section 405(g). The court, therefore, must function *sua sponte* to a great extent.

### A. Analytical Model In *Pro Se* Actions For Judicial Review of Agency Action

 No statute, regulation or court decision prescribes a precise analytical model for *pro se* actions seeking judicial review of adverse administrative decisions by the Commissioner of Social Security.

---

ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job

duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a) (2004).

Necessarily, the level of scrutiny rests in sound discretion of each reviewing court. However, several universal principles factor logically into that equation. Courts must construe *pro se* pleadings and arguments liberally in light of a party's lay status, but must zealously guard their *raison d'être* as neutral and unbiased arbiters. Courts are not bound to "scour the record for every conceivable error," [11] but fundamental fairness and interests of justice require that courts not disregard obvious errors, especially when a lay litigant's ignorance may cause legal errors to go unrecognized.

■ To strike a fair balance, the court should engage in more than a superficial review of the Commissioner's decision. However, since the court is not an advocate, it has no duty to plumb the depths of every facet of the administrative process. How deeply to probe is inherently imprecise, and most likely governed by unique facts of any given case. In this instance, however, the undersigned elects to examine the decision to the same extent as would an experienced lawyer when advising a potential client regarding advisability of pursuing an action for judicial review. This approach assumes that the practitioner is experienced in the subject matter, and willing, but not compelled, to represent the plaintiff. It further assumes that the practitioner's first exposure to the case is after the Commissioner's decision has become final.

A seasoned practitioner would first examine whether the Commissioner's decision generally reflects the protocol established under the Commissioner's own regulations. Next, the practitioner would focuses on ALJ Williams's critical findings, and review them for compliance with applicable law. Finally, the practitioner would examine the evidentiary record to determine whether substantial evidence supports those critical findings.

### B. Sequential Analysis

Regulations require a five-step sequential analysis for initial disability determinations. The five-step sequential analysis for determining applications for benefits based on disability is approved by courts. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").[12]

---

**11.** *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir.2003) (citing *U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)); *Benson v. Commissioner of Social Security Administration,* No. 9:02cv57, 2004 WL 3237348, at *3 (E.D.Tex. Aug.30, 2004); *Hoffman v. Barnhart,* No. 1:00cv605, 2002 WL 31220354, at *8 (E.D.Tex. Oct.4, 2002).

**12.** The five steps are as follows:

1. The Commissioner ascertains *whether the applicant is currently engaging in substantial gainful activity.* (If so, a finding of non-disability is entered and the inquiry ends.)
2. The Commissioner determines *if the applicant's impairment or combination of impairments is severe,* that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities. (If not, the inquiry ends and a finding of non-disability is entered.)
3. The Commissioner determines *whether the severe impairment equals or exceeds those in the Listing of Impairments,* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 (2004) (Listings). (If so, disability is presumed and benefits are awarded.)
4. The Commissioner determines *whether the impairment prevents the individual from engaging in his regular previous employment.* (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step)) shifts to the Commissioner. *See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987).
5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform.* (If the

ALJ Williams faithfully proceeded through all five steps. ALJ Williams's analysis generally *favored* plaintiff because sequential analysis proceeds to step five *only* when an ALJ concludes that the claimant has carried his burden of establishing a *prima facie* case of disability through the first four steps. At step five, the burden shifts to the Commissioner to show that a claimant is capable of performing alternative available work.

ALJ Williams found that plaintiff's combination of impairments—lumbar spine problems, high blood pressure, knee pain, and shoulder pain—do not prevent him from performing work at less than the full range of light but more than sedentary work, provided plaintiff is allowed to sit every 30 minutes during the workday, is never required to crawl or climb ropes, ladders, or scaffolds; and is only occasionally required to stoop, kneel, crouch, and climb stairs and ramps. Tr. 15–16. VE Gilreath testified that a person with that functional capacity and those limitations can work as a small appliances repairman, counter salesman, and as a cashier.[13] Tr. 36–37. Adopting VE Gilreath's testimony, ALJ Williams found that plaintiff was not disabled according to regulations and therefore was not entitled to Supplemental Security benefits. Tr. 18–19.

There is no apparent error in the manner that ALJ Williams went about reaching a decision.

> Commissioner establishes that an applicant can perform alternative employment, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See Id.; Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986); 20 C.F.R. § 416.920(a)-(f) (2004)).

**13.** VE Gilreath testified, and ALJ Williams found, that plaintiff can perform the following work identified by the VE:

## C. Critical Findings

■ ALJ Williams's step five finding of plaintiff's ability to perform available alternative employment is supported by expert vocational testimony from Kay Gilreath, a Vocational Rehabilitation Counselor and Consultant with more than ten years' experience. Tr. 39; see n. 4, *supra.* A finding based on such testimony generally must be upheld by the court unless it is undermined by erroneous predicate findings occurring earlier in the sequential analysis. Seasoned counsel, therefore, would examine those predicate findings.

■ While every finding in the five-step sequential analysis is important, only those arguably adverse to a claimant are likely to be a source of reversible error. There are only two findings that fall into this category:

▶ Step three finding that plaintiff's impairments do not meet or equal presumptively-disabling impairments catalogued in "the Listings;]" and

▶ Step five finding that plaintiff's residual functional capacity allows him to perform alternative work at the sedentary level.]

These two critical findings are addressed next.

### I. *The Listings*

■ "The Listings" is a shorthand reference to Appendix I, Subpart P, Part 404 of the Regulations. That Appendix lists

> Small appliances repairmen: 500 jobs in the Texas economy and 100,000 jobs in the national economy;
>
> Counter salesman: 500 in the Texas economy and 100,000 jobs in the national economy; and
>
> Cashier "(reduced by 50% due to sitting restrictions)": 20,000 in the Texas economy and 500,000 jobs in the national economy. Tr. 207–210; Tr. 18, Finding 11.

various impairments and indicators of their medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004). Impairments found in "the Listings" are those that the Commissioner acknowledges are so severe that they automatically preclude substantial gainful activity. 20 C.F.R. § 416.920(d), Soc. Sec. R. 88–3c (1988). Accordingly, the Listings function as a short-cut for claimants with impairments that render them *per se* disabled. *Albritton v. Sullivan*, 889 F.2d 640, 642 (5th Cir.1989); *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984) (stating that the "appendix relied upon by the district court is a listing of 'per se disabilities' and should be used only if the claimant has satisfied the Secretary that her impairment is severe" and citing *Chico v. Schweiker*, 710 F.2d 947, 951 (2d Cir.1983) and 20 C.F.R. § 404.1525(a), 416.920(d)).

█ The claimant's burden is to provide and identify findings that support *all* of the criteria for a Step 3 impairment determination. *McCuller v. Barnhart*, 72 Fed.Appx. 155, 158 (5th Cir.2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); 20 C.F.R. § 416.926(a) (2004). If the plaintiff fails, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders v. Sullivan*, 914 F.2d at 620. Courts acknowledge that the criteria in the Listings are demanding and stringent. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994).

█ Here, ALJ Williams compared each impairment that he found "severe" at step two (lumbar spine problems, high blood pressure, knee pain, and shoulder pain) with its corresponding Listing at step three. ALJ Williams found that "none of [plaintiff's] impairments, either singly or in combination, are attended by clinical signs of laboratory findings which meet or medically equal" a listed impairment. Tr. 13. In support, ALJ Williams

cited "opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." *Id.*

At this point, counsel for plaintiff would examine the Listings and ALJ Williams's treatment of plaintiff's medical evidence. Listings governing severity rating of plaintiff's impairments are 1.02(A)-(B), 1.04(A)(C), and 4.03. The Listing governing knee pain requires "[i]nvolvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.01(A) (2004). The Listing governing shoulder pain requires "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(B) (2004). The Listing governing lumbar spine pain requires "[e]vidence of nerve root compression ...; or [s]pinal arachnoiditis ...; or [l]umbar spinal stenosis resulting in pseudoclaudication ...." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)-(C) (2004). The Listing governing hypertension requires evaluation in correlation with heart failure or ischemic heart disease, visual impairments, impairment of renal function, or "central nervous system vascular accidents." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.03 (2004).

Review of the evidentiary record fails to disclose a basis for finding Listings level severity for any of plaintiff's impairments. The record indicates successful treatment for plaintiff's complaints of knee and lumbar spine pain, no evidence supporting complaints of shoulder pain, and control of plaintiff's hypertension with medication. ALJ Williams committed no error by find-

ing that none of plaintiff's impairments meet or equal Listings level severity.

### 2. *Residual Functional Capacity*

Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1) (2004). In the latter stages of sequential analysis, the Commissioner decides whether an applicant, notwithstanding severe impairment, has the physical and mental ability to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* 20 C.F.R. § 416.945(b) (2004); Social Security Ruling 96–8p, 61 Fed.Reg. 34474 (July 2, 1996). The Commissioner then utilizes this assessment in determining whether a claimant can still perform past relevant work (step four) or alternative available work as it is generally performed in the national economy (step five).

Here, ALJ Williams determined that plaintiff has RFC for work at "less than the full range of light, but more than sedentary work." Tr. 15. ALJ Williams further limited plaintiff's RFC as follows: plaintiff can only occasionally stoop, kneel, crouch, or climb stairs and ramps, and can never crawl or climb ropes, ladders, or scaffolds. Tr. 18, Finding 6.

In this circumstance, competent counsel contemplating an action for judicial review would examine ALJ Williams's decision and the underlying evidentiary record with respect to rudimentary questions relating to the residual functional capacity determination:

▶ Did ALJ Williams follow the analytical model specified by regulation for making residual functional capacity determinations?]

▶ Does substantial evidence support ALJ Williams's determination that plaintiff has residual functional capacity for sedentary work?]

#### a. *Function–by–Function Assessment*

To guide claims adjudicators, the Commissioner's regulation directs administrative adjudicators to consider seven ordinary physical functions. *See* 20 C.F.R. § 416.945(b). The Commissioner provides even more explicit and detailed directions in a Ruling which directs adjudicators to perform a *function-by-function assessment.* The Ruling requires an adjudicator to perform this assessment, function-by-function, *before* expressing RFC in terms of exertional levels of work. Soc. Sec. R. 96–8p (1996).

▬ Here, ALJ Williams clearly employed the proper analytical model. He cited the correct regulation and ruling, indicating his awareness of the governing standard. Tr. 13. His decision discusses the relevant physical functions, to the extent there is evidence thereof, before he expresses plaintiff's residual functional capacity in terms of an exertional level. Tr. 14–15. Hence, there is no apparent structural error in the manner in which ALJ Williams went about determining plaintiff's residual functional capacity.

#### b. *Substantial Evidence*

Upon determining that ALJ Williams followed proper procedures when determining residual functional capacity, the only remaining areas of interest are whether ALJ Williams's residual functional capacity determination and his subsequent finding that plaintiff can perform available alternative employment are supported by substantial evidence.

#### i. *Definition*

Substantial evidence is more than a scintilla, but less than a preponderance. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir.1992). It requires evidence relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.

*See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen,* 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)). The evidence must be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59 S.Ct. 501, 83 L.Ed. 660 (1939), *cited in* Harvey L. McCormick, Social Security Claims And Procedures § 672, at 193 & n.1 (4th ed.1991).

ii. *Residual Functional Capacity Finding*

█ Substantial evidence supports ALJ Williams's finding that plaintiff retains the exertional capacity for less than the full range of light but more than sedentary work. Plaintiff's medical evidence indicates that Dr. Pearson's treatment for knee, shoulder, and lumbar pain was successful, shown by his release of plaintiff to full work duty. Tr. 178. Chiropractor Dr. Fleck repeatedly noted that plaintiff's

condition was "improved." See Tr. 136, 137, 159, 163. On July 2, 2002, consultative examining physician Dr. Nahas noted "degenerative changes with narrowing of disc interspace at L5–S1 level," but found "no spondylolisthesis." Tr. 112. On August 12, 2003, consultative examining physician Dr. Siy could find no "specific observable pathology .... joint swelling or inflammation.... [or] neuromuscular deficit" to explain plaintiff's subjective complaints of pain in lumbar spine, knee, and shoulder. Tr. 129. Plaintiff's history indicates that his hypertension is controlled by medication. Tr. 112, 122, 124, 128. The evidence includes no medical findings of functional limitations, and no physician-imposed functional restrictions.[14]

In sum, the court's review of the record reveals substantial evidence that plaintiff can perform work at less than the full range of light but more than sedentary level with the limitations which ALJ Williams imposed.

iii. *Alternative Available Work Finding*

█ Finally, ALJ Williams's step five finding that plaintiff can perform alterna-

---

**14.** See *Hollis v. Bowen,* 837 F.2d 1378, 1387 (5th Cir.1988) (lack of medical restrictions or limitations bears upon plaintiff's credibility with respect to alleged impaired ability to work).

The undersigned notes Gulf Coast's Health Center's November 17, 2003, diagnosis of "arthritis right hand" and recommendation against "use of right hand for indefinite time" (signature illegible). Tr. 184. However, the diagnosis is based on "[s]ubjective ... c/o [complaint of] pain and swelling of joints right hand" and observation that "right hand tender with mild swelling." Tr. 185. A claimant's "statement of symptoms" is insufficient to establish impairment. 20 C.F.R. § 416.908 (2004). The diagnosis from Gulf Coast Health Center falls well short of "medical evidence consisting of signs, symptoms, and laboratory findings" required to establish impairment. *Id.* § 416.908. Because the di-

agnosis is not adequate proof of impairment, ALJ Williams could not consider plaintiff's subjective complaints of pain in his right hand. *See* 20 C.F.R. § 416.929(b) (2004). Finally, an impairment must have "lasted or be expected to last for a continuous period of not less than 12 months" to be considered as a potentially disabling impairment. 20 C.F.R. § 416.905(a) (2004). Gulf Coast Health Center's diagnosis of arthritis in right hand is dated November 17, 2003, after plaintiff's March 14, 2002, application for benefits and the November 13, 2003, hearing. Tr. 53, 187. The diagnosis therefore fails to establish impairment for 12 months. Furthermore, the record contains no evidence that plaintiff's alleged pain and swelling of right hand is expected to last for 12 months. In sum, the record fails to establish impairment of plaintiff's right hand.

tive available work as a small appliances repairman, counter salesman, or cashier is supported by expert vocational testimony. Such testimony constitutes substantial evidence when the hypothetical question which elicited it incorporates all disabilities that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony. *Morris v. Bowen,* 864 F.2d 333 (5th Cir.1988). Here, ALJ Williams posited a hypothetical question which included capacity for less than the full range of light work with limitations: "occasional stooping, kneeling, crouching, never crawling, occasionally climbing ramps or stairs, never climbing ropes, ladders or scaffolding, light lifting levels, must be able to sit at least once every 30 minutes because of reported back problems and knee problems." Tr. 207. ALJ Williams's hypothetical question reasonably incorporated both the RFC and limitations which are supported by substantial evidence. Expert vocational testimony in response cited jobs which can be performed at that exertional level with the specified restrictions. Therefore, ALJ Williams's reliance on such testimony is valid, and his determination that plaintiff can perform alternative employment is supported by substantial evidence.

### d. Inability to Pay for Medical Care

The undersigned acknowledges plaintiff's argument that he cannot pay for medical treatment. Inability to pay for medical treatment is a crucial issue only if the ALJ determines that (1) an impairment is disabling, (2) treatment of the impairment is expected to restore ability to work, and (3) the claimant has failed to follow the prescribed treatment. Under those circumstances, inability to pay for prescribed treatment, combined with absence of free community resources, constitutes a justifiable reason for failure to follow treatment. Soc. Sec. R. 82–59 (1982), 1982 WL 31384, at *1. *See also Holley v. Massanari,* 253 F.3d 1088, 1092 (8th Cir.2001); *Roberts v. Shalala,* 66 F.3d 179, 183 (9th Cir.1995).

ALJ Williams did not find any of plaintiff's impairments to be disabling, nor did he find that treatment of plaintiff's impairments would restore his ability to work. Therefore, he was not required to assess plaintiff's alleged inability to pay for medical care.

## VI. Recommendation

The Commissioner's motion for summary judgment should be granted and this case dismissed.

## VII. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

Aug. 8, 2005.