**Guidalyn PAUL**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration**

No. 1:04–CV–272.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 23, 2006.

Robert C. Hardy, Sr., for Plaintiff.

Earnie Artsauna Joe, for Defendant.

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HEARTFIELD, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, affirming the decision of the Commissioner and dismissing this action.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1]

### I. NATURE OF THE CASE

Plaintiff seeks judicial review of the Commissioner of Social Security Administration's (SSA) decision denying her applications for Social Security disability benefits. United States district courts may review such decisions. 42 U.S.C. § 405 (2003). However, Congress limits the scope of judicial review to determinations as to whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). Moreover, when proper principles of law were

---

**1.** *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magistrate Judges, and Beaumont General Order 98–6.

applied, and substantial evidence supports the Commissioner's decision, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also,* 42 U.S.C. § 405(g).

## II. PROCEEDINGS

Plaintiff applied for disability insurance benefits (DIB) and Supplemental Security Income (SSI)[2] on October 30, 2000 (Tr. 373–75),[3] claiming disability beginning April 19, 1999, due to foot and leg pain resulting from surgery and lower back pain (Tr. 73, 85, 107). Following initial denial of her claim, plaintiff requested a hearing before an administrative law judge(ALJ) (Tr. 55). Her claim was assigned to ALJ John Jarrett who convened an evidentiary hearing on April 11, 2002, at which plaintiff appeared represented by attorney Robert Hardy, Esq.

ALJ Jarrett received direct testimony from plaintiff and a vocational expert,[4] (VE) Cheryl Swisher.[5] The remaining evidentiary record consisted of reports from treating sources, and a "Physical Residual Functional Capacity Assessment" completed by Dr. Grethe E. Wik, D.O., a medical consultant[6] who reviewed plaintiff's medical records upon request of Texas Department of Disability Determinations.

## III. THE ADMINISTRATIVE DECISION

■ ALJ Jarrett followed the sequential analysis required by regulations for disability determinations.[7] At step four,

---

2. Disability Insurance ("DIB"), authorized by Title II of the Social Security Act, provides income to individuals who are forced into involuntary, premature retirement. Supplemental Security Income ("SSI"), authorized by Title XVI of the Social Security Act, provides an additional resource to assure that income does not fall below the poverty line. Applicants seeking benefits under either program must prove *disability* within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); see also 20 C.F.R. §§ 404.1505(a), 416.905(a) (2005).

3. The record does not include exhibits relevant to plaintiff's SSI claim. See Tr. 1.

4. Vocational Experts are utilized by the ALJ to determine complex issues, such as whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 416.966(e) (2005). The VE's testimony must: (1) assess the effect of any limitation on the range of work at issue; (2) advise whether the impaired person's residual functional capacity permits him or her to perform substantial numbers of occupations within the range of work at issue; and, (3) identify jobs if they exist and provide a statement of the incidence of such jobs in the region in which the person lives. *See Ellison v. Sullivan,* 921 F.2d 816, 821 (8th Cir.1990).

5. Cheryl Swisher holds a Master of Arts degree in counseling and is a certified rehabilitation counselor. Tr. 65.

6. "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a) (2005). A medical consultant must be "a licensed physician (medical or osteopathic), a licensed optometrist, a licensed podiatrist, or a qualified speech-language pathologist.... [and] must meet any appropriate qualifications for his or her specialty as explained in § 404.1513(a)." 20 C.F.R. § 404.1616(b) (2005).

7. Regulations require a five-step sequential analysis for initial disability determinations. If a claimant is found not to be disabled at any step, the remaining steps are not considered. 20 C.F.R. § 404.1520 (2005). Under this procedure, the burden is on the claimant

after considering all medical evidence including the reviewing physician's (medical consultant) assessment, ALJ Jarrett concluded that plaintiff has residual functional capacity (RFC)[8] for a full range of sedentary work, with no mental limitations. Tr. 28, Finding 5. Based on vocational testimony, he further found that plaintiff's RFC allows her to "perform her past relevant work as a Bookkeeper as this job is customarily performed in the national economy." Tr. 28, Finding 6. Therefore, at step four, he found that plaintiff was "not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision" (Tr. 28, Finding 7), and was not entitled to either DIB or SSI benefits. (Tr. 29).

## IV. Points of Error

Plaintiff's brief recites a general litany of legal duties that govern administrative law judges' consideration of applications for Social Security benefits based on disability. However, the brief *argues* a single point of error, *viz.*, that ALJ Jarrett's residual functional capacity finding is not supported by substantial evidence because *"the administrative law judge failed to recontact any of the three treating sources for clarification of vague opinions in accordance with the regulations and administrative ruling governing development of evidence from the treating source."* Pl.'s

Br. at p. 1. Plaintiff argues that "none of the treating sources offered an opinion about the plaintiff's specific limitations after August 2000, after her unsuccessful work attempt, because the ALJ did not bother to ask." *Id.* at p. 5. Plaintiff asserts that, because opinions from treating physicians Gilstrap, Potvin,[9] and Corley are "vague" (*Id.* at p. 8), regulations required ALJ Jarrett "to develop the record by obtaining additional evidence or clarification from the treating doctor when the record is insufficient to determine a residual functional capacity .... [and] by arranging a consultative examination when the needed information or clarification cannot be obtained from the treating source" (*Id.* at p. 9–10).

## V. Discussion and Analysis

■ The Commissioner's regulation, *Evidence*, 20 C.F.R. § 404.1512 (2004), defines "evidence" generally; informs claimants of their responsibilities to provide certain types of evidence; and delineates the Commissioner's general responsibility to fully develop the record so that it includes a complete medical history. In that respect, a provision quoted in the note authorizes administrative law judges to recontact treating sources for additional information when existing evidence from those sources is inadequate for a determination of whether a claimant is disabled.[10]

---

at every stage, except for the initial inquiry at Step 5. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir.2002); *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987).

**8.** Residual functional capacity (RFC) is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2005). It has three components: physical abilities, mental abilities, and other impairments. *Id.*

**9.** Both plaintiff and ALJ Jarrett refer to this treating physician as "Dr. Potvitch." Tr. 26;

Pl.'s Br. at p. 8. However, evidence of record indicates that the physician's correct surname is Potvin. See, e.g., Tr. 152.

**10.** (e) **Recontacting medical sources.** When the evidence we received from your treating physician or psychologist or other medical source is *inadequate for us to determine whether you are disabled,* we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical

Clearly, this duty is limited to cases wherein existing medical evidence is inadequate to make a disability determination, either because it is internally conflicting, is incomplete, or based on unconventional or questionable diagnostic techniques. *See* Social Security Ruling 96–2p; 61 F.R. 33491 (July 6, 1996) (stating that additional evidence or clarifying reports may be necessary *when the treating source's medical opinion appears lacking or inconsistent);* Social Security Ruling 96–5p (1996), 1996 WL 374183, at *2, *5 (requiring an ALJ to make a reasonable effort to re-contact a treating source who offers an ultimate-issue opinion for clarification of reasons when the adjudicator cannot ascertain the basis of the opinion from the case record).

Prevailing circuit law is consistent with the Commissioner's regulation and internal policy rulings. The Fifth Circuit requires remand for failure to re-contact a treating physician only when (1) the physician's records are inconclusive or otherwise inadequate to receive controlling weight, (2) the record contains no other medical opinion evidence based on personal examination or treatment, *and* (3) the claimant proves prejudice. *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir.2000). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 458.

■ While there are minor semantic differences between the Commissioner's and the courts' articulation of the duty, and there is an enigmatic tension between ap-

plicants' duty to carry their burden of proof and the Commissioner's duty to fully develop the record, there is no need for the court in this case to resolve semantic differences or tension between inconsistent duties. Nor is there any need to analyze whether ALJ Jarrett had a duty in this case to re-contact treating sources. That is because even if one assumes *arguendo* that ALJ Jarrett erred in not re-contacting treating sources, there is no showing of prejudice arising from that alleged error.

First, plaintiff offers no argument that prejudice resulted from the alleged error. Second, careful review of the existing treating source medical opinion does not suggest that additional evidence from those sources might lead to a different decision. Rather, two of those sources hinted strongly that any additional information would support ALJ Jarrett's decision. Dr. Sam Gilstrap, D.P.M., who surgically treated plaintiff's "Haglund's deformity," opined that plaintiff's pain symptoms were within normal limits; that she *"had no need to file for disability;"* and that *"her foot impairment did not make her unemployable."* Tr. 25; *see* Tr. 189. Similarly, Dr. Ronald Corley, M.D., an orthopaedic surgeon in Lufkin, Texas, who treated plaintiff for back and leg pain following referral from Dr. Potvin, observed that plaintiff wanted "to apply for Social Security and to stay on disability until she can apply for Social Security," but stated that *"[t]hey may have work that she can do."* Tr. 216. Finally, the court's confidence that re-contacting treating sources for additional information would not be likely to lead to a different decision can be bolstered from

source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains *a conflict or ambiguity that must be resolved,*

the report does not contain all the *necessary information,* or does not appear to be based on *medically acceptable clinical and laboratory diagnostic techniques . . . .*

20 C.F.R. § 404.1512(e) (2005) (italics added).

the fact that ALJ Jarrett left the record open for more than thirty days after the evidentiary hearing for submission of new evidence, and plaintiff—although represented by counsel—failed to submit any.

Plaintiff's single point of error therefore fails.

## VI. Recommendation

The Commissioner's decision should be affirmed.

## VII. Objections

■ Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1, 6(b), and 72(b).

■ A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

Jan. 31, 2006.