George WASHINGTON, Jr.

v.

**Jo Ann BARNHART, Commissioner of Social Security Administration**

No. 1:04 CV 518.

United States District Court, E.D. Texas, Beaumont Division.

Jan. 6, 2006.

George Washington, Jr., Beaumont, TX, Pro se.

William Winston Newbill, Dallas, TX, for Defendant.

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CRONE, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, affirming the Commissioner's decision and dismissing this action.

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with proposed findings of fact and conclusions of law, together with a recommendation for disposition.[1]

---

**1.** *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV-72 & App. B, R.1 H for the

## I. NATURE OF THE CASE

This action seeks judicial review of the Commissioner of Social Security Administration's (SSA) decision denying plaintiff's applications for Social Security disability benefits.

## II. PROCEEDINGS

Plaintiff applied for Supplemental Security Benefits (Tr. 192–93) and Disability Income Benefits (Tr. 37–39), claiming disability due to hip replacement surgery and related complications.[2] An administrative law judge (ALJ), Jack W. Raines, convened an evidentiary hearing. Plaintiff appeared, represented by an attorney, Kenna Garner, Esq.

ALJ Raines received direct testimony from plaintiff and a vocational expert (VE) Cheryl Swisher.[3] The remaining evidentiary record consisted of clinic notes and reports from treating sources; reports from a consultative examining physician, Dr. J. Barnes, M.D., of Quality Care Medical Group in San Antonio, Texas;[4] and two Physical Residual Functional Capacity Assessments completed by medical consultants, Dr. Bonnie Blacklock, M.D., and Dr. Frank Zimmerman, M.D., each of whom reviewed plaintiff's medical records and completed Residual Functional Capacity Assessment upon request of Texas Department of Disability Determinations.[5]

## III. THE ADMINISTRATIVE DECISION

ALJ Raines concluded that plaintiff is not disabled. Specifically, he found that although plaintiff suffers from severe impairments, he nevertheless retains residual functional capacity to perform sedentary work, subject to certain limitations. Tr. 18; Tr. 20, Finding 7. Further, this capacity permits plaintiff to perform his past relevant work "as administrative assistant as generally performed in the national economy." Tr. 19; Tr. 20, Finding 8.

## IV. COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT

Because plaintiff proceeds *pro se*, the court established a procedure to facilitate judicial review. First, the court ordered the Commissioner to file a transcript of administrative proceedings. Second, the court requested that the Commissioner accompany the transcript with a motion for summary judgment should the Commis-

---

Assignment of Duties to United States Magistrate Judges, and Beaumont General Order 04–02.

2. Supplemental Security Income and Disability Income Benefits are separate and distinct programs established in and governed by the Social Security Act. *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 500(A)-(B) (14th ed.2001). Although these benefits serve different purposes, an applicant seeking benefits under either program must prove disability.

3. Vocational Experts help determine complex issues, such as whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 404.1566(e) (2005).

4. A consultative physician is a physician who performs a discrete individual examination of the plaintiff at the request of Social Security Administration. *See* 20 C.F.R. §§ 404.1519, 404.1519h (2005).

5. "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, ...or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a) (2005). A medical consultant must be "a licensed physician (medical or osteopathic), a licensed optometrist, a licensed podiatrist, or a qualified speech-language pathologist.... [and] must meet any appropriate qualifications for his or her specialty as explained in § 404.1513(a)." 20 C.F.R. § 404.1616(b) (2005).

sioner advocate affirming the administrative disposition (Dkt. No. 10). The Commissioner complied substantially by filing a motion for summary judgment with memorandum in support on March 31, 2005 (Dkt. No. 14), followed shortly by filing of the administrative transcript on April 5, 2005 (Dkt. No. 15).

Plaintiff responded in timely fashion. He disagrees with the Commissioner and argues, first, that his past relevant work as an administrative assistant was not sedentary because it "kept [him] on [his] feet quite a bit during an 8 to 12 hr. day stooping and bending," a job situation which he found—then and now—"almost impossible to perform." Pl.'s Resp. at p. 3. He further argues that pain medication, although it "offers some relief," also "make[s] [him] drowsy" which forces him to rest. Finally, plaintiff argues that he followed treating physicians' recommendations regarding exercise but found "only . . . minimal relief from pain." *Id.*

## V. DISCUSSION AND ANALYSIS

### A. Plaintiff's Heavy Burden

■ Disability claimants unsuccessful in administrative proceedings face a heavy and formidable burden in subsequent actions for judicial review. Their first hurdle is a stringent and rigid eligibility standard established in the Social Security Act itself. The statute defines disability as inability to do *any* substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2005); Soc. Sec. R. 96–4p (1996), 1996 WL 374187, at *1. The social security definition is "so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981). Therefore, even clear and convincing proof of a serious disease or impairment causing general disablement does not, without more, establish disability

within the meaning of the Social Security Act.

■ A second hurdle, equally rigorous, is the limited scope of permissible judicial review. Congress does not authorize federal district courts to reweigh evidence or make an independent *de novo* (fresh) determination. Instead, Congress limits judicial determinations to whether (a) the Commissioner applied proper legal standards, and (b) the decision is supported by substantial evidence. *See Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). If proper principles of law were applied, and the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are *conclusive* and *must be affirmed. Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co.,* 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also,* 42 U.S.C. § 405(g).

■ Third, when the issue is whether the decision is properly supported, the substantial evidence standard is highly deferential to the Commissioner. Substantial evidence is less than a preponderance. *Anthony v. Sullivan,* 954 F.2d at 292. It requires only evidence relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen,* 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)). The evidence must be only "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59

S.Ct. 501, 505–06 (1939), *cited in* Harvey L. McCormick, Social Security Claims and Procedures § 672, at 193 & n. 1 (4th ed.1991).

 In practice, this means that a reviewing court must affirm the Commissioner, even when the court disagrees with the Commissioner's decision, so long as it is supported by some evidence that any reasonable fact finder might accept. Stated another way, were there a jury trial, substantial evidence exists when *one* reasonable juror might find the evidence persuasive, even though *all* remaining reasonable jurors might evaluate the evidence differently.

 The combined effect of these three obstacles is that the proverbial "deck" is "stacked" substantially in the Commissioner's favor. Reasonable persons and reasonable jurists might debate and disagree on whether this judicial review process is ideal. However, it is the process Congress established, and federal district courts must apply it.

## B. Analytical Model for Judicial Review

 In this case, plaintiff is *pro se* (self represented). This circumstance imposes yet another disadvantage for the lay plaintiff who is unfamiliar with legal terms of art such as "substantial evidence," and lacks expertise in arcane rules governing social security applications. As referenced earlier, the court attempts to unburden *pro se* litigants of some of their disadvantages by requiring the Commissioner to make the first move and defend her decision. This procedure usually serves salutary purposes of identifying for both the plaintiff and the court (a) the relevant evidence of record, (b) important findings, and (c) applicable law. This modest "head start" gives a *pro se* plaintiff a better opportunity to respond more meaningfully

thus narrowing issues for decision, and it is a useful vehicle for apprising the court of what the plaintiff believes to be error in the Commissioner's decision.

 But despite the court's beneficent intent, this procedure is imperfect. The court cannot reasonably expect the Commissioner to ferret out possible errors and argue them in plaintiff's behalf. Moreover, the lay plaintiff predictably focuses more on evidence favoring his application rather than on alleged errors. In effect, lay arguments usually invite the court to re-weigh the evidence and come to a different conclusion than did the Commissioner. This is an exercise in which the court may not engage.

In sum, both parties' submissions, while useful, do not focus well on critical issues that courts can address in limited judicial review under Section 405(g). The court, therefore, must function *sua sponte* to some extent. That extent, however, is not well-defined.

In a previous case, this court paused to ponder how proactive it should be in *pro se* actions seeking judicial review of adverse decisions on applications for social security benefits. *See Elam v. Barnhart,* 386 F.Supp.2d 746 (E.D.Tex.2005). There, the court perceived tension between its general, affirmative duty to construe *pro se* submissions liberally, and the lack of duty in social security cases to scour the record for every conceivable error. *Id.,* at 753. Similarly, the court sensed tenseness arising from its concurrent duties to do justice while remaining neutral and impartial. *Id.* Leaning over backward to help a *pro se* litigant borders on becoming an advocate.

 The court attempted to strike a fair balance by engaging in "more than a superficial review" without "plumb[ing] the depths of every facet of the adminis-

trative process." *Id.* Ultimately, the court elected to examine the Commissioner's decision in the same manner as would an experienced lawyer when advising a potential client regarding advisability of pursuing an action for judicial review. In such a circumstance, the court believed a seasoned practitioner likely would engage in three critical inquiries:

1. Does the Commissioner's decision generally reflect the protocol established in the Social Security Act, the Commissioner's own regulations, and internal policies articulated in Social Security Rulings?

2. Were the Commissioner's critical fact findings made in compliance with applicable law?

3. Does substantial evidence support those critical findings?

That analytical model served adequately in *Elam,* and nothing in the instant case suggests it is inappropriate here. Accordingly, this report follows the same course.

## C. The Commissioner's Decisional Protocol

Regulations require a five-step sequential analysis for initial disability determina-

tions.[6] This procedure is approved by courts. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell,* 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

ALJ Raines clearly utilized this process. He found at Step 4 that plaintiff is not disabled because he retains residual functional capacity to perform his past relevant work. Therefore, he was not required to make findings at Step 5, where the burden of proof shifts to the Commissioner to prove ability to perform alternative work.

ALJ Raines also cited and applied the correct statutory definition of disability. Tr. 19. Thus, there is no apparent legal error in the manner that ALJ Raines went about reaching a decision.

## D. Critical Fact Findings: Compliance with Applicable Law?

While every finding in the five-step sequential analysis is important, only findings adverse to a claimant are likely to be

6. The five steps are as follows:

1. The Commissioner ascertains *whether the applicant is currently engaging in substantial gainful activity.* (If so, a finding of non-disability is entered and the inquiry ends.)

2. The Commissioner determines *if the applicant's impairment or combination of impairments is severe,* that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities. (If not, the inquiry ends and a finding of non-disability is entered.)

3. The Commissioner determines *whether the severe impairment equals or exceeds those in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1* (2005) (Listings). (If so, disability is presumed and benefits are awarded.)

4. The Commissioner determines *whether the impairment prevents the individual from engaging in his regular previous employment.* (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner.) *See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987).

5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform.* (If the Commissioner establishes that an applicant can perform alternative employment, the burden shifts back to the applicant to show he cannot perform the alternative labor.) *See Id.; Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir. 1986).

20 C.F.R. § 404.1520(a)-(f) (2005).

a source of reversible error. Here, only two findings fall into this category:

1. ALJ Raines's Step 3 finding that plaintiff's severe impairments do not meet or equal presumptively-disabling impairments catalogued in "the Listings;" and

2. ALJ Raines's Step 4 finding that plaintiff's residual functional capacity allows him to perform past relevant work as an administrative assistant.

The Step 3 finding is of interest because in the administrative proceedings—when plaintiff was represented by licensed legal counsel—plaintiff specifically contended that his impairments met "the listings." Tr. 210. The Step 4 finding obviously is crucial because it dictated the ultimate adverse decision.

### 1. *The Listings Findings*

An ALJ who finds at Step 2 that an applicant has severe impairments must then consult "The Listings" at Step 3. "The Listings" is a vernacular term referring to Appendix I, Subpart P, Part 404 of the Regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2005). That appendix lists various impairments and indicators of their medical severity. Impairments in "the Listings" are so severe that they preclude substantial gainful activity. 20 C.F.R. § 404.1520(d) (2005), Soc. Sec. R. 88–3c (1988). Accordingly, the Listings function as a short-cut whereby an ALJ may take administrative notice of *per se* disability for claimants with listings-level impairments. *Albritton v. Sullivan,* 889 F.2d 640, 642 (5th Cir.1989); *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir.1984) (stating that the "appendix relied upon by the district court is a listing of 'per se disabilities'," citing *Chico v. Schweiker,* 710 F.2d 947, 951 (2d Cir.1983) and 20 C.F.R. §§ 404.1525(a), 416.920(d) (2005)).

Listings criteria are demanding and stringent. *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir.1994). Moreover, at Step 3, the burden of proof rests with a claimant. That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a Step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir.1990); 20 C.F.R. § 404.1526(a) (2005). Importantly here, when a claimant fails, courts must conclude that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders v. Sullivan,* 914 F.2d at 620.

ALJ Raines determined that Listings relevant to plaintiff's specific impairments are 1.02 [7] (major dysfunction of joints) and 1.04 [8] (disorders of spine). ALJ Raines compared each impairment that he found "severe" at Step 2 with its corresponding Listing at Step 3. ALJ Raines found that plaintiff's *"impaired hip* does not meet the requirements of *listing* 1.02 for major dysfunction of joints because he can ambulate

---

7. Listing 1.02 governing *hip impairment* requires "gross anatomical deformity ... and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints ... with: (A) Involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02—1.02(A) (2005).

8. Listing 1.04 governing *disorders of the spine* requires "compromise of a nerve root ... or the spinal cord, with: (A) Evidence of nerve root compression ... or (B) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy ... or (C) Lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging...." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)-(C) (2005).

effectively." (Italics added.) Tr. 15. Further, he found that plaintiff's *"back impairment* does not meet the requirements of *listing* 1.04 for disorders of the spine because he has no motor, sensory or reflex abnormalities." (Italics added.) *Id.*

 ALJ Raines *applied* the Listings in the manner contemplated by the regulation. The reasons he cited are relevant and determinative. Hence, he committed no *legal* error at Step 3.[9]

### 2. *Residual Functional Capacity Findings*

Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1) (2005). In the latter stages of sequential analysis, the Commissioner decides whether an applicant, notwithstanding severe impairment, has physical and mental ability to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(b) (2005); Social Security Ruling 96–8p, 61 Fed.Reg. 34474 (July 2, 1996). The Commissioner utilizes this assessment to then determine whether a claimant can still perform past relevant work (Step 4), or alternative available work as it is generally performed in the national economy (Step 5).

Here, ALJ Raines determined that plaintiff's residual functional capacity is for "less than the full range of sedentary work, but not significantly less." Tr. 18. ALJ Rames determined that plaintiff "can carry 10 lbs. both frequently and occasionally, with pushing and pulling the same.... stand and walk 2 hours in a usual workday, with normal breaks.... sit for 6 hours in a usual workday, with normal breaks.... [and] occasionally climb stairs ... stoop and kneel." *Id.* ALJ Raines determined that plaintiff "should not climb ladders, or balance, crouch or crawl.... [or] work with dangerous machines or at heights." *Id.*

Competent counsel would examine this finding and the underlying evidentiary record in light of rudimentary principles governing residual functional capacity determinations. To assess whether ALJ Raines's residual functional capacity determination complied with applicable law, counsel first would examine the decision for indications of whether ALJ Raines followed the analytical model specified by regulation for making residual functional capacity determinations. In that respect, the Commissioner's regulation directs administrative adjudicators to consider seven ordinary physical functions. *See* 20 C.F.R. § 404.1545(b) (2005). The Commissioner provides even more explicit and detailed directions in a Ruling which directs adjudicators to perform a *function-by-function assessment.* The Ruling requires an adjudicator to perform this assessment, function-by-function, *before* expressing residual functional capacity in terms of exertional levels of work. Soc. Sec. R. 96–8p (1996).

 Here, ALJ Raines clearly employed the proper analytical model. He cited the correct regulation and ruling, indicating his awareness of and intention to apply governing standards. Tr. 15.

---

**9.** ALJ Raines applied Listing 1.02 (major disfunction of joints) whereas plaintiff's counsel in the administrative proceeding relied on Listing 1.03 (reconstructive surgery). This departure is of no consequence. Plaintiff clearly did not qualify under Listing 1.03 because it requires a showing of inability to return to effective ambulation within 12 months of onset. Plaintiff was able to ambulate within 6 months after surgery. Tr. 103. Thus, if plaintiff were to meet the Listings at all, he would have to qualify under Listing 1.02, which ALJ Raines addressed. Plaintiff was favored, not prejudiced, by ALJ Raines's election to evaluate the severity of plaintiff's hip impairment under Listing 1.02.

His decision discusses the specified relevant physical functions (to the extent there is evidence thereof) before he expresses plaintiff's residual functional capacity in terms of an exertional level. Tr. 16–18. Hence, there is no apparent structural error in the manner in which ALJ Raines went about determining plaintiff's residual functional capacity.

**E. Critical Fact Findings: Supported by Substantial Evidence ?**

*1. Step 3 (the "Listings")*

██ As mentioned earlier, the Commissioner's Step 3 finding that a claimant's impairments do not meet listings-level severity is deemed supported by substantial evidence when a claimant fails to carry his burden to provide and identify findings that support *all* listings criteria. *Selders v. Sullivan,* 914 F.2d at 620. As for plaintiff's *hip impairment,* there is no medical or other evidence of gross anatomical deformity, chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints, or involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively, as required by Listing 1.02(A). As for plaintiff's *back impairment,* the record contains no evidence of compromise of a nerve root or spinal cord, coupled with evidence of nerve root compression or spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or of lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging, as required by Listing 1.04.

In short, because the evidentiary record before the court fails to disclose a basis for finding Listings level severity for plaintiff's severe impairments, plaintiff failed to carry his burden of proof. In that circumstance, the court must conclude that substantial evidence supports the Commissioner's Step 3 finding. Therefore, there is no basis for a seasoned counsel to argue, or for this court to conclude, that ALJ Raines's Step 3 finding (that none of plaintiff's impairments meet or equal Listings level severity) is unsupported by substantial evidence.

*2. Step 4 Residual Functional Capacity Findings*

The only remaining areas of interest are whether ALJ Raines's residual functional capacity determination (limited range of sedentary work) and his related finding that plaintiff can perform past relevant work (administrative assistant) are supported by substantial evidence.

*a. Capacity for·Sedentary Work*

██ Plaintiff testified that he cannot sit for longer than fifteen minutes without experiencing pain in his right hip and lower back, and that he must lie down two or three times per hour. Tr. 215, 217. Plaintiff reported that Vicodin and Naproxen relieve his pain but make him drowsy. Tr. 216. In addition, treating physician Dr. A.C. Walkes, M.D., of Jefferson County Health and Welfare, Beaumont, Texas, diagnosed plaintiff as suffering from "non insulin dependent diabetes mellitus; degenerative joint disease; lumbar spine disc extension" (Tr. 191), and opined on a checklist form that plaintiff must use a cane when standing or walking (Tr. 190), and can sit, stand, and walk only for a total of two hours in an eight-hour work day. Tr. 189–190.

Had ALJ Raines fully credited plaintiff's subjective complaints and the treating physician's opinions, he would not have found plaintiff able to perform sedentary work. A person who must lie down and rest *three times an hour,* and a total of *six hours* out of an eight-hour workday, obvi-

ously cannot sustain employment of any kind. Indeed, the vocational expert testified that an impairment requiring a person to lie down two to three times per *day* (not per hour) for a combined total of even *one hour per day* (not five or six hours per day) would "erode any jobs in the national economy." Tr. 226.

ALJ Raines, however, did not fully credit the plaintiff's and Dr. Walkes's testimonies after weighing them against each other and additional medical evidence of record. Instead, he found plaintiff's subjective complaints to be "generally true but exaggerated." Tr. 18. ALJ Raines specifically cited "evident solidity of the [hip] repair" and lack of "clinical manifestations of pain ... [such as] atrophy or other degeneration in the muscles or nerves below claimant's hips." Tr. 17. ALJ Raines also considered plaintiff's failure to follow medical advice, i.e. engage in strengthening exercises, and his failure to seek treatment other than potentially addictive medications for alleviation of pain. Tr. 18. Similarly, ALJ Raines considered Dr. Walkes's opinions unpersuasive because his diagnoses were unsupported by clinical or laboratory data or test results and were based instead "on claimant's reported symptoms." Tr. 18. He also noted that plaintiff himself did not testify that he was required to remain in a reclining position for six hours out of an eight-hour day, as implied by Dr. Walkes. Tr. 17.

Subjective complaints of pain attendant to exertion may be rejected when not corroborated by objective medical evidence. *See Wren v. Sullivan,* 925 F.2d 123, 129 (5th Cir.1991); *Houston v. Sullivan,* 895 F.2d 1012, 1016 (5th Cir. 1989). Similarly, treating physician opinion may be rejected for good cause, which exists when the treating physician's statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, are contradicted by other evidence (such as the claimant's own testimony), or where the record contains contradictory opinions from other physicians such as reviewing or examining physicians. *See Greenspan v. Shalala,* 38 F.3d 232, 237–38 (5th Cir. 1994); *Oldham v. Schweiker,* 660 F.2d at 1084; *Warncke v. Harris,* 619 F.2d 412, 417 (5th Cir.1980).

Here, ALJ Raines found that other medical evidence of record does not support the degree of pain which plaintiff alleges, or the severity of restrictions which Dr. Walkes imposed. Clearly, these reasons for rejecting plaintiff's subjective testimony and the medical opinion of one treating physician were rational, and could strike a reasonable fact-finder as sufficient for the credibility determinations that ALJ Raines made. Moreover, it is apparent that ALJ Raines did not completely ignore plaintiff's evidence. His finding that plaintiff can stand or walk for two hours in an eight-hour day takes into consideration plaintiff's subjective complaints of hip and lower back pain; and his finding that plaintiff cannot work with dangerous equipment or at heights accounts for complaints of drowsiness caused by medication. Finally, his decision reflects that he evaluated plaintiff's subjective complaints in accordance with the seven factors specified in 20 C.F.R. § 404.1529(c)(3), and he evaluated Dr. Walkes's opinions in accordance with the six factors specified in 20 C.F.R. § 404.1527(d). The court, therefore cannot find an error in methodology that might deprive the decision of substantial evidentiary support.

There remains, however, the question as to whether other evidence that ALJ Raines found more credible *affirmatively* supports his residual functional capacity determination. Resolving this question requires the court to compare that evidence

with the requirements for sedentary work. Such work involves lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools. A sedentary job is defined as one which involves mostly sitting, and only occasional walking or standing. *See* 20 C.F.R. § 404.1567(a) (2005).[10] The Commissioner's interpretation of "occasional" is activity occurring not more than two hours total out of an eight-hour work day. Soc. Sec. R. 96–9p (1996), 1996 WL 374185, at *3.[11]

ALJ Raines's ultimate residual functional capacity finding was within the range of the available evidence. First, two non-examining physicians, who reviewed plaintiff's medical evidence upon request of state agency responsible for making initial disability determinations, opined that plaintiff has RFC for medium work. The physicians concluded that plaintiff can occasionally lift 50 pounds and frequently lift 25 pounds; can sit for 6 hours and stand and/or walk for 6 hours in an 8–hour day; and has unlimited ability to push and pull and no postural limitations. Tr. 136–37; Tr. 144–45.

Second, a report from consultative examining physician Dr. J. Barnes, M.D., also supports ALJ Raines's RFC assessment. Following examination on April 21, 2001, Dr. Barnes noted that plaintiff could ambulate without a cane and had normal gait and station. Tr. 131. Dr. Barnes also found "no motor, sensory or reflex abnormalities ... [and] no atrophy in his lower extremities." Tr. 132. Dr. Barnes ordered radiologic examination, which re-

vealed "normal anatomical alignment" and "normal lumbar spine" and confirmed plaintiff's earlier hip surgery. Tr. 133–34. There was no basis for ALJ Raines to conclude that a person lacking motor, sensory or reflex abnormalities, with normal anatomical alignment and normal gait and station while ambulating without difficulty cannot perform work at the sedentary exertional level.

Finally, ALJ Raines cited evidence from plaintiff's treating physicians at University of Texas Medical Branch in Galveston, Texas (UTMB), indicating successful hip surgery shown by normal range of motion and no obvious tenderness on palpation six months later. Tr. 103. Fourteen months after surgery, physicians at UTMB noted equivalent leg length and full range of motion in plaintiff's back. Tr. 124. An x-ray performed the same day confirmed "no bone or joint abnormality" in lumbar spine, and satisfactory alignment of surgical repair of plaintiff's hip. Tr. 128. Again, nothing suggests inability to perform work at the sedentary exertional level.

In sum, a reasonable fact finder weighing the same evidence could come to the same conclusion as did ALJ Raines, *viz.*, that plaintiff can perform work at less than the full range of sedentary work but not significantly less, with limitations. Thus, there is no substantial evidence error.

*b. Ability to Perform Past Relevant Work*

■■■ ALJ Raines asked the vocational expert to respond to a hypothetical ques-

---

**10.** Sedentary work is defined in nearly identical terms in the Dictionary of Occupational Titles and Social Security regulations. *See Dictionary of Occupational Titles*, Vol. II, App. C, § IV (1991); 20 C.F.R. § 404.1567(a) (2005); *see* n. 12, *supra*. Moreover, the regulations confirm that exertional levels of sedentary, light, medium, heavy, and very heavy "have the same meaning as they have in the

Dictionary of Occupational Titles, published by the Department of Labor." 20 C.F.R. § 404.1567 (2005).

**11.** The Dictionary of Occupational Titles is in substantial agreement: "Occasionally: activity or condition exists up to 1/3 of the time." *Dictionary of Occupational Titles*, Vol. II, App. C, § IV (1991).

tion. The question asked the expert to opine whether a person with specified limitations and restrictions can perform available work. The posed limitations included no climbing of ramps, ladders or scaffolds, occasional climbing of stairs, no balancing, occasional stooping and kneeling, no crouching or crawling, and no working around hazardous machinery or at dangerous unprotected heights. In addition, ALJ Raines asked the vocational expert to consider additional limitations:

"Lifting and carry *occasionally* 10 pounds, lift and carry *frequently* 10 pounds. Would require a sit/stand option so that [plaintiff] can stand or walk only a half hour at a time, but must be able to sit down for a few minutes. Not to exceed five minutes. But could then stand or walk for another half hour. *The total time on [plaintiff's] feet remains the same, at least six hours out of an eight hour day.* Additionally, [plaintiff] could only sit a half hour at a time, but must be able to move about, either standing or walking for a few minutes, not to exceed five minutes. But again, can then sit for another half hour. *The total time sitting still remains the same, at least six hours out of an eight hour day.*"

Tr. 225. Italics added.

The vocational expert responded that such a person can work as an administrative assistant. In her testimony, the vocational expert referred to the Dictionary of Occupational Titles (Tr. 224), which states that work as an administrative assistant is performed at the sedentary level. *Dictionary of Occupational Titles,* Vol. I, § 169.167–010 (1991).

An attorney advising an unsuccessful claimant whether to pursue an action for judicial review initially might think that there was a substantial evidence error inherent in ALJ Raines's reliance of the vocational expert's testimony because the question was confusing and internally conflicting. It asked the vocational expert to assume that an individual could lift and carry 10 pounds both *occasionally* and *frequently.* It also asked the expert to assume that an individual would be both *on his feet* and also *sitting* for six hours out of an eight hour day. A meaningful response to such a question would seem impossible.

Second, ALJ Raines's ultimate finding regarding plaintiff's residual functional capacity did not match the parameters of his hypothetical question to the witness. ALJ Raines found that plaintiff can stand or walk only *two* hours in an eight-hour day, not *six* hours as posed. Thus, there arises a question as to whether the expert's vocational testimony supports the ultimate finding.

▬ As a general rule, expert vocational testimony constitutes substantial evidence in support of an ALJ's ultimate determination when the hypothetical question which elicited it incorporates all disabilities that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony. *Morris v. Bowen,* 864 F.2d 333 (5th Cir. 1988). Here, the ALJ's ultimate determination is consistent with the expert vocational testimony; the disabilities recognized by the ALJ are reasonable under the evidence, but the hypothetical question in part assumed lesser disabilities than the ALJ ultimately found. The court must consider, therefore, whether the expert vocational testimony nevertheless can be considered substantial evidence.

Careful analysis leads to the conclusion that the disconnect between the limitations *posed* and the limitations *found* does not

deprive the decision of substantial evidentiary support. First, ALJ Raines's ultimate residual functional capacity finding was more favorable to the plaintiff than the limitations posed in his hypothetical question to VE Cheryl Swisher. A person with the ability to stand or walk for six hours out of an eight-hour workday ordinarily is considered capable of performing light work.[12] ALJ Raines subsequently decided, however, that plaintiff's impairments restrict him to performing only a limited range of less strenuous sedentary work. Only if VE Swisher responded to the hypothesis with testimony that plaintiff can perform jobs above sedentary would there be a problem.

Second, VE Swisher testified that plaintiff can perform only sedentary work. Although ALJ Raines asked a confusing question insofar as standing or walking, his question was clear and unambiguous as to limitations on lifting. Since he posed a question specifying a ten pound weight limitation, VE Swisher was compelled to look only at sedentary jobs. She clearly could not and did not factor into her opinion the posed ability to stand or walk for six hours in a work day.

The bottom line is that all requirements for proper reliance on expert vocational testimony substantially are met. The hypothetical question, as perceived by the expert, incorporates the same disabilities that ALJ Raines found. The disabilities recognized by ALJ Raines are reasonable under the evidence. Finally, ALJ Raine's ultimate determination is consistent with the expert vocational testimony. That is, ALJ Raines's ultimate determination that plaintiff can perform past relevant *sedentary* work as administrative assistant is consistent with his finding that plaintiff can stand no more than two hours in an eight-hour day, and is supported by expert vocational testimony. His reliance on such testimony is valid, and his determination that plaintiff can perform past relevant work is supported by substantial evidence.

## VI. RECOMMENDATION

The Commissioner's decision should be affirmed by granting her motion for summary judgment.

## VII. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

 A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

December 12, 2005.

12. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, *the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.* Soc. Sec. R. 83–10 (1983), 1983 WL 31251, at *5–6 (emphasis added).