**Raphelle P. FRANK**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration.**

**No. 1:05–CV–53.**

United States District Court, E.D. Texas, Beaumont Division.

Oct. 2, 2006.

Shimon Kaplan, Lone Star Legal Aid, Beaumont, TX, for Raphelle P. Frank.

Kendall Morrison Rees, Social Security Administration, Dallas, TX, Jo Anne B. Barnhart, Commissioner of Social Security Administration.

### MEMORANDUM AND ORDER OVER-RULING OBJECTIONS TO MAGIS-TRATE JUDGE'S REPORT AND RECOMMENDATION

HEARTFIELD, District Judge.

The court referred this matter to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The magistrate judge submitted a Report and Recommendation suggesting that the court affirm the Commissioner's decision denying plaintiff's application for social security benefits.

Plaintiff filed timely objections. The court, therefore, conducted a *de novo* review of the objections in relation to the pleadings, record, available evidence, and applicable law. *See* FED.R.CIV.P. 72(b). After careful consideration, and for reasons stated below, the court concludes that plaintiff's objections are without merit; the magistrate judge's analysis is correct; and the Commissioner's decision should be affirmed.

Plaintiff unsuccessfully sought disability insurance benefits and supplemental security income benefits based on a mental impairment, *viz.*, depression. In this ac-

tion, the sole error submitted for judicial review is plaintiff's contention that the Commissioner's determination that plaintiff's depression is not so severe as to be *presumptively* disabling [1] is not supported by substantial evidence. Specifically, plaintiff contends that the Commissioner's determination that plaintiff's depression does not meet "Listing 12.04" lacks substantial evidentiary support.[2]

■ Judicial review of the Commissioner's administrative decision is limited to examinations of whether the Commissioner applied correct principles of law and, if so, whether substantial evidence supports the Commissioner's decision. Here, plaintiff does not challenge the Commissioner's application of legal principles, nor does plaintiff object to the magistrate judge's conclusion that the Commissioner's decision exhibits no "structural error." Therefore, the sole question here is whether substantial evidence supports the Commissioner's decision that plaintiff's depression does not meet stringent requirements of Listing 12.04. *See Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir.1994) (observing that Listings criteria are demanding and stringent).

■ Plaintiff seeks to demonstrate lack of substantial evidence through an elliptic argument that substantial evidence does not support the Commissioner's decision because the Commissioner failed to give controlling weight to a treating source who opined that plaintiff's symptoms meet re-

quirements of Listing 12.04. Semantics and syllogistic niceties aside, when the Commissioner is *required* to accept a treating source's opinion, it is error for the Commissioner to reject the opinion and render an adverse decision based on other evidence or the lack of other evidence. *See Newton v. Apfel,* 209 F.3d 448, 455 (2000); 20 C.F.R. § 404.1527(d)(2) (2006); Soc. Sec. R. 96–2p (1996), 1996 WL 374188, at *2. The court will consider plaintiff's objection in this context.

The magistrate judge extensively and correctly recited rudimentary principles governing administrative assessments of treating source opinion. The magistrate judge concluded that reasons expressed by the Commissioner for not giving plaintiff's treating source opinion controlling weight are proper under law. The magistrate judge then determined that the reasons expressed by the Commissioner are supported by substantial evidence of record. The magistrate judge, therefore, recommended that the Commissioner's decision be affirmed.

■ The plaintiff objects that the magistrate judge skipped a critical analytical step. Plaintiff argues that the magistrate judge should have looked first and exclusively at the Commissioner's regulation 20 C.F.R. § 404.1527(d)(2), wherein the Commissioner states generally when treating source opinion is afforded controlling weight. That occurs when the treating source opinion (a) is well-supported by medically acceptable clinical and diagnostic

1. The Commissioner utilizes a five-step sequential analysis when considering disability claims. *See* 20 C.F.R. § 404.1520 (2006). At Step 3, and again at Step 5, the Commissioner may in certain instances take administrative notice of disability without benefit of additional evidence, such as expert vocational testimony, or further analysis.

2. Appendix I, Subpart P, Part 404 of the Commissioner's regulations (20 C.F.R. Pt. 404,

Subpt. P, App. 1 (2005)) lists various impairments that the Commissioner considers so severe as to preclude all substantial gainful activity. Such listed impairments constitute "per se disabilities." *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir.1984). Listing 12.04 deals with mental impairments called "affective disorders" which include severe depression when it corresponds to certain enumerated factors.

technique, and (b) is not inconsistent with other substantial evidence of record. The plaintiff then argues that since both circumstances exist in this case, the inquiry should end.

The Commissioner discredited treating source opinion in part because the Commissioner concluded it was not reached through medically acceptable clinical or laboratory techniques. Plaintiff argues that this finding is an evidentiary nullity absent *medical expert testimony* vouching that the treating source did not employ medically acceptable clinical and laboratory diagnostic techniques. This premise, however, is incorrect. A medical expert's testimony is *required* only in very limited circumstances not present here.[3] Otherwise, the decision whether to utilize a medical expert is discretionary. *See Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (recognizing that medical advisers could, *but were not required* to be used in explaining complex medical problems to the examiner); *Haywood v. Sullivan,* 888 F.2d 1463, 1467 (5th Cir.1989) ("An ALJ requests a MA [medical adviser] to testify *when she or he feels it necessary.*") (emphasis added).[4]

Plaintiff's second argument is that the Commissioner was required to accept treating source opinion as controlling here because *other medical evidence* (from a consultative examining psychiatrist and clinical records from University of Texas Medical Branch in Galveston, Texas) is consistent with treating source opinion. This argument, while factually correct to an extent, paints with too broad a brush. Other medical evidence consistent with the treating source's opinion on the threshold question of whether plaintiff has a mental impairment consisting of depression (a fact also accepted by the Commissioner) is not determinative. Rather, the critical question is whether other medical evidence is consistent with the opinion that the plaintiff's depression is of such severity as to meet the level established in Listing 12.04. Nothing in the other medical evidence cited by plaintiff establishes that his depression meets all criteria necessary to satisfy Listing 12.04. While some clinical notes can be viewed as evidencing presence of *some* Listing factors, they also can be viewed as not fully supporting the existence of *all* required factors. The highly deferential standard of judicial review compels the court to acknowledge that the Commissioner's prerogative is to determine not only whether other medical evidence is consistent, but also the *extent* to which other medical evidence of record supports the treating physician's opinion.

Thus, under plaintiff's preferred analytical model, the Commissioner was not bound to accept the treating source's opinion as controlling. But even if the court assumes *arguendo* that the core prerequisites of the regulation were met, it would

---

**3.** An ALJ must utilize a medical adviser only when establishing the onset date of disability for slowly progressive impairments (*Spellman v. Shalala,* 1 F.3d 357, 362–363 (5th Cir. 1993); Soc. Sec. R. 83–20 (1983), 1983 WL 31249, at *3), or when determining whether a claimant's impairments are equivalent in severity to impairments in the Listings (SSR 96–6p). Here, plaintiff argues that his impairments *meet* the express Listings factors, not that his impairments are *equivalent* in severity to Listings impairments.

**4.** Cases cited by plaintiff are inapposite. *Ransom v. Heckler* and *Lynn v. Schweiker* teach that lay administrative law judges cannot make their own independent medical findings. In no way does either case hold that an administrative law judge cannot, without benefit of expert medical testimony, evaluate whether medical evidence is credible, whether it is the product of medically acceptable clinical or laboratory techniques, and whether it is supported by other evidence of record. If plaintiff's argument were correct, a medical expert would be required in almost every case.

not follow inevitably that the Commissioner erred in rejecting treating source opinion. Circuit law permits the Commissioner to reject treating source opinion for any good cause. Good cause may exist when—as here—the treating source's statements are conclusory and brief.[5] *Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir.2001). Good cause obviously may exist when—also as here—the treating source's opinion is unsupported by his own clinic notes or when the opinion is contradicted by the claimant's own testimony. *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995)

Finally, good cause may exist when a treating source appears to be "leaning over backwards to support the application for disability benefits." *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985). In this case, the Commissioner could reject the treating source opinion on that basis alone. The treating source, having not examined or treated the plaintiff for more than a year, having never recorded any notation in clinical notes suggesting presence of Listing 12.04 factors, and having noted that the plaintiff's depression *improved* with medication and cognitive therapy, submitted a last-minute check-listed form conveniently stating, without explanation, that plaintiff's depression exhibits most of the Listing 12.04 factors. Such circumstances suggest subjective support for the application rather than objective diagnoses.

For the foregoing reasons, the court will overrule plaintiff's objections, adopt the magistrate judge's report and affirm the Commissioner's decision. In overruling plaintiff's objections, however, the court does not fully embrace the Commissioner's decision. The court agrees with the magistrate judge's observations that the administrative law judge (whose decision the Commissioner adopted as her own) reached a "debatable" conclusion as to the findings of the consultative examining psychiatrist. The court further agrees with the magistrate judge's apparent impression that the administrative law judge took a cheap shot when opining that missing evidence (results of a "Beck Depression" test) likely contained evidence adverse to the plaintiff. Finally, the court is left to wonder why the administrative law judge did not trouble himself to develop more expert and specific evidence regarding "Hamilton Depression Inventory" and "Beck Depression" scores that the judge considered unreliable.

These concerns leave the court with an unsettling hunch that it might have reached a different conclusion than the Commissioner. However, as the magistrate judge correctly stated, a reviewing court lacks the prerogative to make a *de novo* determination. In a substantial evidence review, the court's role is limited to ascertaining whether the Commissioner was confronted with a conspicuous absence of credibility choices. Such was not the case here, and the court is bound to affirm, even if doing so leaves an intuitively unpleasant aftertaste.

### ORDER

Plaintiff's objections are **OVER-RULED.** The findings of fact and conclusions of law of the magistrate judge are correct, and the report of the magistrate judge is **ADOPTED.** A final judgment will be entered, affirming the Commissioner's decision and dismissing this case.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review

---

5. Tr. 510; see Tr. 390–396

and submission of a report with a recommended disposition. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magistrate Judges; *see also* Gen. Order 05–6.

## I. NATURE OF CASE

Plaintiff requests judicial review of the Commissioner of Social Security Administration's denial of his application for Disability Insurance benefits (DIB) and Supplemental Security Income (SSI).[1] United States district courts may conduct limited judicial review of such decisions to determine whether they are supported by substantial evidence and reflect application of correct principles of law. 42 U.S.C. § 405 (2003).

## II. PROCEEDINGS

Plaintiff claims disability due to diabetes (Tr. 51) and depression (Tr. 99). His application has been considered twice by an Administrative Law Judge (ALJ), Gerald Meyer. Both times, plaintiff's application was denied. The first denial generated an appeal for judicial review, and resulted in a

"sentence four remand" on the Commissioner's own motion.[2] *See* 1:00cv517, Docket No. 22. Following the Commissioner-requested remand, the Appeals Council ordered a new hearing, and directed ALJ Meyer to give "further consideration to the treating and examining source opinions" and "further consideration to the claimant's maximum residual functional capacity." Tr. 519.

ALJ Meyer convened a second evidentiary hearing on September 18, 2002. Plaintiff, represented by legal counsel, Shimon Kaplan, Esq., appeared and testified. The remaining evidentiary record consists of reports from treating sources (Raymond Coxe, Ph.D., Psychiatric Clinic at University of Texas Medical Branch, Galveston, Texas (UTMB), Veterans Administration); a report from a consulting examining psychiatrist, Dr. Victor M. Fermo, M.D.;[3] a mental residual functional capacity assessment completed by a "medical consultant"[4] who reviewed plaintiff's medical records upon request of Texas Department of Disability Determinations; and testimony from a "vocational expert" witness, Dr.

---

1. Applicants seeking benefits under either program must prove *disability* within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs.

2. 42 U.S.C. § 405(g) provides for remand of social security appeals in two situations, referred to as "sentence four" and "sentence six" remands. After considering the pleadings, the court may order a sentence four remand in conjunction with a judgment affirming, modifying, or reversing the decision of the Commissioner. *See* 42 U.S.C. § 405(g). The plaintiff prevails in a sentence four remand because judgment is entered and the litigation is terminated. The court does not retain jurisdiction after remanding the case to the Commissioner. *See Shalala v. Schaefer,* 509 U.S. 292, 301, 113 S.Ct. 2625, 2631, 125 L.Ed.2d 239 (1993).

3. An examining physician is a physician who has performed at least one discrete individual examination of the plaintiff. Generally, the Commissioner gives more weight to the opinion of a source who has examined the plaintiff rather than the opinion of a source who has not performed such an examination. *See* 20 C.F.R. § 404.1527(d)(1) (2005).

4. The Commissioner defines "medical consultant" as "a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a)(2005).

   Margaret Ann Gardner, Ph.D., served as a medical consultant in this case and completed a "mental residual functional capacity assessment." Tr. 127.

Norman Hooge, Ph.D.[5]

## III. Administrative Decision

Regulations require a five-step sequential analysis for initial disability determinations. If a claimant is found disabled (or not) at an early step, remaining steps are not considered. 20 C.F.R. § 404.1520 (2005). Under this procedure, the burden is on the claimant through the first four steps. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir.2002); *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987). When the claimant carries that burden at Step 3, benefits are awarded because the plaintiff has shown that his impairments meet or medically equal listings of impairments that are presumptively disabling. If the claimant does not carry the Step 3 burden, the claimant has another chance by proving at Step 4 that his impairments, while not presumptively disabling, are of such severity as to prevent him from performing past relevant work. In that event, the claimant establishes a *prima facie* case of disability. *See Chaparro,* 815 F.2d at 1010. The burden then shifts to the Commissioner at Step 5 to rebut the *prima facie* case by showing that the claimant has residual functional capacity to perform alternative available work.

ALJ Meyer concluded that plaintiff's severe impairments consist of "diabetes mellitus, HIV infection and a mood disorder." Tr. 508. ALJ Meyer denied plaintiff's application at Step 5 of the sequential analysis described above. This necessarily means that ALJ Meyer concluded that (a) plaintiff failed to show that his impairments met or medically equaled presumptively disabling impairments; but (b) plaintiff established a *prima facie* case of disability by showing that his impairments were of such severity as to prevent his performing past relevant work.

## IV. Point of Error and Commissioner's Response

Plaintiff's wide-ranging brief notes several alleged deficiencies in ALJ Meyer's decision.[6] However, the only flaw presented for the court's consideration is a single point of error:

> *"Is there substantial evidence in the record to support the conclusion of the SSA that [plaintiff] does not meet the Listing for depression, 20 C.F.R. Part 404, Appendix 1 to Subpart P, 12.04 Affective Disorders."*

Pl.'s Br., p. 4. Thus, plaintiff's sole point of error challenges ALJ Meyer's Step 3 finding that plaintiff's impairments do not meet or equal the Listing of presumptively disabling impairments.[7]

Plaintiff argues that his treating psychologist, Dr. Raymond Coxe, presented evidence that "conclusively demonstrates that [plaintiff] meets Listing 12.04." Pl.'s Br., p. 22. Plaintiff argues that ALJ Meyer erred in not accepting that evidence

---

**5.** Vocational Experts are utilized to "assess whether jobs exist for a person with the claimant's precise abilities." *Gilliam v. Califano,* 620 F.2d 691, 694 n. 1 (8th Cir.1980).

Dr. Hooge holds a Ph.D. in health studies, specializing in mental health. He is a licensed professional counselor and certified rehabilitation counselor. Tr. 565.

**6.** Plaintiff avers that ALJ Meyer "assume[d] the role of medical advisor, and render[ed] expert medical opinions" when he assigned lesser credibility to the treating psychologist's

and examining psychiatrist's opinions as based on plaintiff's subjective complaints. Pl.'s Br., p. 3, 30. Plaintiff also states that Veterans' Administration award of disability, rendered after ALJ Meyer's decision, constitutes new evidence justifying remand. *Id.* p. 26.

**7.** This report does not analyze the assertions mentioned in note 6 because they are not framed or argued as points of error as required by order of the court. *See* "Notice to Parties," Docket No. 7.

because Dr. Coxe's opinion is supported by his own records, by University of Texas Medical Branch records, by the consultative examining physician's report, and by diagnostic tests. *Id.*, p. 28.

The Commissioner responds that Dr. Coxe's opinion, based solely on "six counseling sessions from September 1997 to December 1997," does not evince a treatment relationship of sufficient duration to establish "a longitudinal picture of Plaintiff's impairment." Deft.'s Br., p. 10. The Commissioner further argues that ALJ Meyer properly afforded lesser weight to Dr. Coxe's opinion for good cause. Specifically, the Commissioner argues that good cause existed because Dr. Coxe's opinion is (1) unsupported by his own record and (2) inconsistent with report of consultative, examining physician, treatment records from University of Texas Medical Branch, and findings of state agency medical consultants. *Id.*, p. 9. Finally, the Commissioner argues that plaintiff's history demonstrates need for only sporadic treatment, thus proving that his mental impairment is not of Listings level severity. *Id.*, p. 10.

## V. THE LISTINGS DETERMINATION

Since the single focus of this action for judicial review is ALJ Meyer's Step 3 finding, it is appropriate to delineate relevant analytical principles. Under the sequential analysis described above in Section III, an administrative law judge who determines at Step 2 that a claimant has one or more severe impairments must then proceed to Step 3 where he compares the claimant's impairments with a Listing of Impairments. "The Listings" is a vernacular term referring to Appendix I, Subpart P, Part 404 of the Regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2005). That appendix lists various impairments and indicators of their medical severity.

Impairments in "the Listings" are so severe that they preclude substantial gainful activity. 20 C.F.R. § 404.1520(d) (2005); Soc. Sec. R. 88–3c (1988), 1988 WL 236022, at *3. A person whose impairment meets or equals an impairment in the Listing is presumptively disabled. 20 C.F.R. § 404.1520(d) (2005); *See* Soc. Sec. R. 88–3c (1988), 1988 WL 236022, at *7. Accordingly, the Listings function as a shortcut for taking administrative notice of *per se* disability for claimants with listings-level impairments. *Albritton v. Sullivan*, 889 F.2d 640, 642 (5th Cir.1989); *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984) (stating that the "appendix relied upon by the district court is a listing of 'per se disabilities'," citing *Chico v. Schweiker*, 710 F.2d 947, 951 (2d Cir.1983) and 20 C.F.R. § 404.1520(d) (2005))

■ Listings criteria are demanding and stringent. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). The burden of proof rests with a claimant to provide and identify *medical signs and laboratory findings* that support *all* criteria for a Step 3 impairment determination. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.1990); *Washington v. Barnhart*, 413 F.Supp.2d 784, 793 (E.D.Tex.2006); 20 C.F.R. § 416.926(d) (2005). When a claimant fails to sustain that burden, courts must conclude that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 619–620; *Washington*, 413 F.Supp.2d at 793. A claimant may not establish Listings level severity through subjective testimony. *See Sullivan v. Zebley*, 493 U.S. at 530, 110 S.Ct. 885.

In the present case, plaintiff's mental impairment is an affective disorder (de-

pression), which Section 12.04 of the Listings defines as follows:

> *Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life: it generally involves either depression or elation.*

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2005). An affective disorder meets Listings level when requirements in both Sections A and B of Listing 12.04 are satisfied, or when Section C requirements are satisfied.[8] *Id.*

Treating psychologist Dr. Raymond Coxe counseled plaintiff upon referral from Triangle Aids Network. Tr. 384. Dr. Coxe conducted seven counseling sessions from September, 1997, through October, 1998. His records consist of terse clinical notes quoted entirely and verbatim in the margin.[9] For purposes of plaintiff's appli-

**8.** Section A factors require:

Medically documented persistence, either continuous or intermittent, of . . . :
1. Depressive syndrome characterized by at least four of the following:
   a. Anhedonia or pervasive loss of interest in almost all activities; or
   b. Appetite disturbance with change in weight; or
   c. Sleep disturbance; or
   d. Psychomotor agitation or retardation; or
   e. Decreased energy; or
   f. Feelings of guilt or worthlessness; or
   g. Difficulty concentrating or thinking; or
   h. Thoughts of suicide; or
   i. Hallucinations, delusions, or paranoid thinking;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2005).

At least two of the following Section B factors must be present for the affective disorder to meet Listings level:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

*Id.*

Section C requires the following:
Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and *one* of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*

**9.** ALJ Meyer construed the unsigned session notes as Dr. Coxe's notes, a reasonable presumption because the dates correlate to those recounted at the end of Dr. Coxe's two-page assessment. The session notes, rearranged chronologically, are as follows:

"09/23/97 First session. We will evaluate for depression and ADL. Current symptoms include feeling tired, pessimistic and problems getting things done. Also very worried about current situation and his health. The diagnostic impression is Major Depression, Single Episode. The GAF is 50." Tr. 390.

"10/21/97 Mr. Frank discussed his current moods and we evaluated his current adaptive behavior. Needs some assistance and support in handling longer term plans. Slower in getting things done. Loss of interest in many areas. Goal: We will continue to assess. Worked on suggestion interventions such as combatting (sic) negative thoughts." Tr. 391.

"10/28/97 Assessed his level of depression. Looked at Beck Depression and Hamilton scores and both in the depressed range. Used test items to develop specific goals." Tr. 392.

cation, Dr. Coxe also signed a two-page "check-list assessment" of unknown origin, dated December 31, 1998. The checklist contains items that generally correspond to Listing 12.04 factors. Specifically, Dr. Coxe checked that plaintiff has "a severe depressive syndrome" and experiences:

- "[a]nhedonia ... sleep disturbance ... decreased energy ... feelings of guilt or worthlessness ... [and] [t]houghts of suicide";
- marked limitations in daily living activities; maintaining social functioning; concentration, persistence or pace; and
- "[r]epeated (three or more)" "episodes of deterioration or decompensation in work or work-like settings."

Tr. 662–663.

If fully credited, Dr. Coxe's opinions provide a basis for a finding of disability because they would establish that plaintiff's depression meets or equals Listing 12.04. Specifically, in checklist form, Dr. Coxe opined that plaintiff exhibits five depressive syndrome characteristics delineated in Listing 12.04, section A, and all characteristics delineated in Section B.

## VI. Treating Physician's Opinion

As ALJ Meyer quite clearly did not credit Dr. Coxe's opinions, this case ultimately turns on the propriety of his credibility decisions as measured by precedential jurisprudence, regulations and the constantly-evolving policy interpretations found in Social Security Rulings.[10] This court previously concluded that the Commissioner has fashioned a pragmatic, common-sense analytical model to guide administrative adjudicators when addressing the often-raised issue of how much weight to afford treating physicians' opinion. *Welsh v. Barnhart,* 2002 WL 32073076, at *6 (E.D.Tex. Dec. 23, 2002). The court described that model as *"a three-pronged analytical construct that flows naturally from one step to the next, and illuminates the inquiry in a way that administrative adjudicators of claims can make logical, just, consistent, and supportable determinations." Id.; see Stafford v. Barnhart,* 402 F.Supp.2d 717, 723 (E.D.Tex.2005).

First, a treating physician's *medical opinion* is entitled to great deference. The Commissioner even requires that a treating physician's opinion as to the nature and severity of a patient's impairment be given *controlling weight* if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." 20 C.F.R. § 404.1527(d)(2) (2005); *see* Soc. Sec. R. 96–2p (1996), 1996 WL 374188, at *1. The Fifth Circuit similarly holds that " 'ordinarily the opinions, diagnoses, and medical evidence of a treating physician ... [are] accorded considerable weight in determining disability.' " *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir.1985) (citing *Barajas,* 738 F.2d at 644);

"10/28/97 He is getting some benefit from cognitive approaches. Used supportive methods to assist with his grief and losses centering around his health issues." Tr. 394.

"12/11/97 We went over his Hamilton Depression Inventory. He will set up an appointment at UTMB to discuss possible anti depression meds with doctor." Tr. 395.

"3/31/98 He is getting some benefit from cognitive approaches. Used supportive methods to assist with his grief and losses centering around his health issues. Medication from UTMB, antidepressants are helping." Tr. 396.

"10/7/98 We assessed his current satisfactions and dissatisfactions to determine source of depression. Certainly his health problems falls (sic) in this category. Also discussed need for possible reeval of medication for depression." Tr. 393.

10. A discussion of ALJ Meyer's specific credibility choices is contained in Section VII, below.

*see also Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir.2001) (citing *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.1994) (internal citations omitted)); *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995).

■ The third prong of the analysis addresses how much deference to afford a treating physician opinion when it is not entitled to controlling weight.[11] An administrative law judge may reject or discount a treating physician's opinion—even with respect to medical issues—when "good cause" is shown. *See Myers,* 238 F.3d at 621; *Newton,* 209 F.3d at 455–56; *Greenspan,* 38 F.3d at 237; *Moore,* 919 F.2d at 905. Good cause may exist when the physician's statements are conclusory and brief; when statements are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; otherwise unsupported by the evidence; or when the treating physician is not credible because (s)he is "leaning over backwards to support the application for disability benefits." *Scott,* 770 F.2d at 485; see *also Myers,* 238 F.3d at 621 (citing *Greenspan,* 38 F.3d at 237); *Newton,* 209 F.3d at 456. The Commissioner instructs administrative adjudicators to weigh a treating source's opinion in light of six factors provided in the Commissioner's regulations published in 20 C.F.R. § 404.1527. *See also* Soc. Sec. R. 96–2p (1996), 1996 WL 374188, at *4; Soc. Sec. R, 96–5p (1996), 1996 WL 374183, at *3.

## VII. DISCUSSION

ALJ Meyer did not assign *controlling weight* to Dr. Coxe's opinion (Tr. 511), and his articulated reasons indicate that he gave *little weight* to Dr. Coxe's checklist opinions. ALJ Meyer discredited Dr. Coxe's opinions because, in ALJ Meyer's view, Dr. Coxe's opinions were not reached through medically acceptable clinical or laboratory techniques; are unsupported by medical evidence of record; and are not supported by other medical evidence. Tr. 509–511. Under governing precedent recited earlier, these grounds, singly and in combination, constitute good cause for rejecting treating physician opinion. Therefore, there is no structural error in ALJ Meyer's approach.

■■ The court's role thus becomes a determination of whether ALJ Meyer's articulated reasons have evidentiary support. In so doing, the court must be mindful of the limited nature of substantial evidence review. The court cannot substitute its judgment for that of ALJ Meyer simply because the court might come to a different conclusion if the court were evaluating the evidence *de novo.* Rather, the court may reverse only if there is no substantial evidence. " '[N]o substantial evidence' will be found only where there is a *'conspicuous absence of credibility choices'* or *'no contrary medical evidence.'* " *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983) (citing *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir.1973) (emphasis added); and *Payne v. Weinberger,* 480 F.2d 1006 (5th Cir.1973)). Therefore, plaintiff's point of error turns on whether there was a "conspicuous absence" of evidence to support these articulated reasons.

---

11. The second prong, not relevant here, addresses treating physicians' opinions on *ultimate issues governing entitlement to benefits.* When a treating physician's opinion consists of an ultimate-issue expression, it remains the sole responsibility of the Commissioner to determine whether a claimant is "disabled" under governing rules, notwithstanding the deference afforded treating physician's opinions as to the nature and severity of patients' impairments. *See Newton,* 209 F.3d at 455; *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir.1990); *see* 20 C.F.R. § 404.1527(e)(3) (2005).

The remainder of this report addresses ALJ Meyer's articulated grounds in relation to the evidence of record.

### A. Finding that Dr. Coxe's Opinion Not Reached Through Medically Acceptable Clinical or Laboratory Techniques

■ ALJ Meyer found that Dr. Coxe's own notes "do not show that [his] opinion was reached through medically acceptable clinical or laboratory techniques." Tr. 509. ALJ Meyer stated:

> *What is missing from Dr. Coxe's records is supporting information—the same information one looks for in a consultative examination, per 20 CFR 416.919n: claimant's chief complaints, a detailed history of claimant's chief complaints, a description and disposition pertinent findings based on the history and tests, with the results of those tests; a diagnosis and prognosis and a functional analysis based on the examinations and treatments. Further Dr. Coxe does not include any comments on claimant's initial condition and the progress or lack thereof during the counseling. Dr. Coxe's records offer no support to his opinion evidence, made sometime later.*

Tr. 510. Substantial evidence supports ALJ Meyer's assessment. As noted earlier, Dr. Coxe's clinical notes are terse. Conclusory and brief statements generally carry little weight. Moreover, Dr. Coxe's notes fail to identify any specific complaints or symptoms which could reasonably indicate that plaintiff's mental impairment meets criteria of Listing 12.04. *See* n. 11, *supra.* Finally, Dr. Coxe twice noted that plaintiff was *benefiting* from "cognitive approaches" (Tr. 394, 396); and in March, 1998, Dr. Coxe noted *improvement* with antidepressant medications (Tr. 396).

### B. Finding that Dr. Coxe's Opinion is Unsupported by Other Medical Evidence

#### 1. *Evidence from Other Treating Sources*

■ Plaintiff argues that University of Texas Medical Branch records corroborate Dr. Coxe's opinions. Specifically, plaintiff points to statements from a treating psychiatrist, Dr. Eric Avery, M.D., and clinic notes from the Virology Clinic, that include notations of depression symptoms that substantially correspond with some of the Section A and Section B factors of Listing 12.04.[12] ALJ Meyer, however, found that medication records from the psychiatric clinic at University of Texas Medical Branch (UTMB) in Galveston, Texas, do not support Dr. Coxe's assessment. He noted that plaintiff was prescribed Prozac in December, 1997, and plaintiff reported improvement in March and again in May, 1998. Tr. 510. ALJ Meyer found it significant that plaintiff became non-compliant with medications from June through September, 1999, and, thereafter, was not allowed to return to the psychiatric clinic without an interview. *Id.*

ALJ Meyer also considered information, sparse as of the date of the hearing, from the Veterans Administration psychiatric clinic (VA): "As of September, 2001, he had not been seen by VA Psychiatry (Ex 12F–18), and he testifies that he has not yet been seen as of the date of the hearing. Claimant was seen by a Social Worker in February 2002, and missed a Mental health Clinic appointment in April 2002 (Ex 12F–1)." Tr. 511.

---

**12.** The record references to UTMB notations of insomnia, forgetfulness, hopelessness, depressed mood, and diminished sex drive are found in Plaintiff's Brief, p. 15, n. 55; p. 17.

ALJ Meyer explained why he considered records from UTMB and the VA as failing to support Dr. Coxe's opinion:

> What is missing from the later medical records is any indication that claimant's mental impairments cause such severe effects on his life as Dr. Coxe writes of. What these later records, and indeed Dr. Coxe's records, show is that **claimant's successful treatment required psychoactive medications,** which Dr. Coxe could not prescribe, and that **claimant had initial improvement when those medications were prescribed** but that he rapidly became non-compliant and did not continue to improve.

Tr. 511, emphasis supplied. This finding is supported by substantial evidence. ALJ Meyer could reasonably conclude that though plaintiff suffers from depression, the record from other treating sources provides no confirmation that plaintiff's impairment meets Listings level severity. Plaintiff improved with medication (Tr. 396) but did not take medication as instructed (Tr. 398, 411). Failure to follow prescribed treatment generally precludes a finding of disability.[13] *Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir.1988) (citing *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir.1987)); 20 C.F.R. § 404.1530(b) (2005).

### 2. Evidence from Consultative Examining Psychiatrist

Plaintiff argues that the report from the examining physician, Dr. Victor M. Fermo, M.D., also corroborates Dr. Coxe's opinions. Dr. Fermo examined plaintiff on July 7, 1997, and he reported depressed mood, sad affect, and reduced "psychomotor activity." Tr. 253. He also recorded plaintiff's statements that he "sleeps poorly" and "is slow in doing tasks." Id. These reports and observations do, as plaintiff argues, relate to at least some of the Section A factors in Listing 12.04.

However, Dr. Fermo also noted that plaintiff "is oriented correctly to three spheres," has intact memory, fair insight, and his "[t]hinking is organized, relevant and goal directed." Tr. 253. He also noted plaintiff's statements that he "goes grocery shopping with his sister.... take[s] care of his personal hygiene and get[s] himself dressed," and socializes with his family. Id. Dr. Fermo's diagnosis was "mood disorder due to HIV positive with depressive features [and][h]istory of alcohol and multiple drug abuse." Id.

ALJ Meyer found that "Dr. Coxe's description is not consistent with Dr. Fermo's evidence [which] ... does not even describe claimant's impairment as depression." Tr. 511. This evaluation of Dr. Fermo's report is debatable. But it is not so far afield that the court can confidently conclude that no reasonable person could have come to the same conclusion. In any event, Dr. Fermo's findings do not corroborate Dr. Coxe's opinions fully because he makes no findings that would satisfy any of the Section B factors or Section C factors of Listing 12.04.[14]

---

13. Violation of religious tenets, small likelihood of successful treatment, requirement for amputation, and extreme risk associated with treatment all constitute good cause for failure to follow prescribed treatment. 20 C.F.R. § 404.1530(c) (2005). Case law also establishes that inability to pay constitutes good cause for failure to follow treatment. *Lovelace v. Bowen,* 813 F.2d 55, 59 (5th Cir.1987). The record presents none of these factors in the instant case.

14. Although not relevant to the point of error under consideration, it is appropriate to note that ALJ Meyer assigned little weight to Dr. Fermo's findings because they are based "wholly or partly, on misrepresentations by omission by claimant." Tr. 507. ALJ Meyer noted that plaintiff told Dr. Fermo in July, 1997, "that he smoked marijuana and crack every now and then, but did so last in the end of 1996." Tr. 507; see Tr. 252. However,

### 3. *Results of Clinical Tests*

Dr. Coxe's clinic notes refer to "Beck Depression and Hamilton scores." Dr. Coxe further states that results of both tests are "in the depressed range." Tr. 392. ALJ Meyer found the "Assessment Results: Hamilton Depression Inventory—Score Summary Table" (Hamilton Inventory) unreliable, and he opined that the "Beck Depression" to which Dr. Coxe referred possibly contained evidence adverse to the plaintiff because it was not produced in the record.

The plaintiff understandably takes exception to ALJ Meyer's adverse inference regarding Beck Depression scores, and also devotes considerable criticism of ALJ Meyer's conclusion that the Hamilton Inventory scores are unreliable. These arguments, however, are largely irrelevant to the point under consideration. Dr. Coxe opined that the Hamilton and Beck scores indicate depression. ALJ Meyer found that plaintiff has severe depression. So, the disagreement over the significance and reliability of the tests is generally moot and of academic interest only.

The salient point is whether these scores constitute other medical evidence confirming depression of Listings level severity. Plaintiff offers no explanation as to how the scores correlate with Factors A, B and C in Listing 12.04. On the other hand, ALJ Meyer observed that the Hamilton Inventory "focuses on the claimant's self-reported symptoms ... [and] the responses have all the defects of self-reporting of symptoms." Tr. 509; see n. 15, *supra.* As noted earlier, proof of a Listings level impairment can never be based on subjective testimony. ALJ Meyer could reasonably have concluded that the

Hamilton Inventory score was tantamount to subjective testimony.

As for the missing Beck Depression test, ALJ Meyer may well have acted arbitrarily in assuming that it contained adverse evidence. That conclusion, however, does not equate to compelling an inference that the test showed Listings level depression. Given that plaintiff has the burden at Step 3, and that circuit law describes that burden as "demanding and stringent," the court has no basis for concluding that ALJ Meyer erred in concluding that Dr. Coxe's opinions as to Listings level depression were unsupported by other medical evidence, including Beck Depression test scores.

### VIII. RECOMMENDATION

The Commissioner's decision should be affirmed.

### IX. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

August 24, 2006.

---

plaintiff "told a different story in March 1997 when ... [c]laimant told the VA that he had been using $40.00 worth of crack cocaine every day for the past 6 years .... [and] was

approved for admission to detoxification." Tr. 507; see Tr. 319. ALJ Meyer observed that "there is no record of his ever entering [detoxification] program." Tr. 507.